ESTATE OF NERO DIREZZA, DECEASED, JAMES L. DIREZZA, PERSONAL REPRESENTATIVE, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16705–79.    Filed January 11, 1982.

*Gene F. Reardon,* for the petitioner.

*W. Edward Williams* and *Thomas G. Hodel,* for the respondent.

DAWSON, *Judge:* In the statutory notice which he sent to petitioner, respondent determined an addition to tax under section 6651(a)(1)[1] in the amount of $552 but did not determine any deficiency in Federal estate tax. The issues for decision are as follows:

(1) Whether this Court has jurisdiction to redetermine an addition for late filing attributable to an agreed additional tax liability if respondent sends a statutory notice determining the addition but no deficiency in tax.

(2) If this Court has jurisdiction, whether petitioner exercised ordinary business care and prudence in relying on an attorney to prepare and timely file the estate tax return so that the addition to tax under section 6651(a)(1) should not be sustained.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

The decedent, Nero DiRezza, died on April 17, 1975. At that time, he was a resident and domiciliary of the State of Colorado. His son, James L. DiRezza (hereinafter DiRezza), resided in Golden, Colo., at the time that the petition herein was filed. DiRezza was named executor in his father's will. On May 19, 1975, he was duly appointed personal representative

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect at the time of the decedent's death on Apr. 17, 1975.

of his father's estate by the District Court of Arapahoe County, Colo.

The decedent's estate tax return was due on January 17, 1976.[2] However, it was not filed with the Internal Revenue Service Center at Ogden, Utah, until January 10, 1977. No extension of time to file was ever sought.

## Facts Relating to the Jurisdictional Issue

Tax in the amount of $35,810.76 was reported on the decedent's estate tax return. Because that return had been delinquently filed, the Ogden Service Center summarily assessed additions to tax for late filing and late payment in the respective amounts of $8,057.42 and $2,148.65. As ad valorem penalties, those additions to tax were determined (i.e., measured) by the amount of tax shown on the return as filed.[3]

Petitioner protested the assessment of both additions to tax, which was then abated by the Service Center. The estate tax return was then assigned to the Denver District Office for examination and a final determination whether petitioner's delinquency was due to reasonable cause and not willful neglect.

After its examination of the estate tax return, the Denver District concluded that petitioner's delinquency was not excused.[4] It also proposed an additional estate tax liability in the amount of $2,208. Accordingly, the additions to tax for late filing and late payment were reassessed in the original amounts. Petitioner paid these amounts under protest.[5] In

---

[2]See sec. 6075(a), which provides that an estate tax return shall be filed within 9 months after the date of the decedent's death.

[3]Those additions were determined as follows:

late filing:

$$\$35,810.76 \times .045/\text{mo.} \times 5 \text{ mos.} = \$8,057.42$$

See secs. 6651(a)(1) and 6651(c)(1).

late payment:

$$\$35,810.76 \times .005/\text{mo.} \times 12 \text{ mos.} = \$2,148.65$$

See sec. 6651(a)(2).

[4]See sec. 4562.1(2), I.R. Manual-Audit (CCH).

[5]Petitioner has apparently filed a claim for refund in respect of these amounts.

contrast, it agreed with the additional tax liability and paid it.[6] However, it did not agree that it was liable for any addition in respect of the additional tax liability. Consequently, on September 10, 1979, respondent sent petitioner a statutory notice determining an addition for late filing in the amount of $552, but no deficiency in estate tax. See Rev. Rul. 78-20, 1978-1 C.B. 441. This addition to tax was determined (i.e., measured) by the amount of the additional tax liability to which petitioner had previously agreed.[7]

## *Facts Relating to the Reasonable Cause Issue*

Within a month after his father's death, DiRezza contacted Doug McKinnon, a local attorney who had previously represented him on several occasions over the years, and requested that he handle his father's estate. McKinnon declined because he was not familiar with estate practice. DiRezza then asked for a recommendation. McKinnon referred him to Harold Fielding, an attorney with whom he shared offices. McKinnon recommended Fielding because he enjoyed a good reputation, was considered reliable, and had many years of legal experience. Fielding's practice included probate, although most of the estates that he had previously handled fell in the $20,000 to $50,000 range. He had never before filed a Federal estate tax return.

DiRezza contacted Fielding and retained him. He employed professional counsel because he felt he was not equipped to administer his father's estate. He was a pipefitter by profession with only a formal 10th grade education and a G.E.D. degree. Furthermore, he had never before been a personal representative of an estate. However, DiRezza, who was 38 years old at the time of his father's death, was not completely without business or legal experience. In addition to his employment, he owned some stocks and bonds as well as real estate in both Golden and Parker, Colo. He had also filed

---

[6]Presumably, the additional tax liability was assessed pursuant to a waiver of restrictions on assessment.

[7]This addition was determined as follows:

$$\$2,208 \times .05/mo. \times 5 \text{ mos.} = \$552.$$

See sec. 6651(a)(1).

Federal income tax returns and had retained legal counsel on several occasions to represent him in various contract and real estate transactions.

When he retained Fielding, DiRezza furnished him with all relevant documents in his possession, including tax returns. DiRezza then instructed him to handle all matters related to the probate and administration of his father's estate, specifically including the preparation and filing of all necessary tax returns. Although at that time DiRezza was not specifically aware of the requirement to file a Federal estate tax return, he was very conscious of taxes in general and the need to file returns on behalf of the decedent. However, he never inquired about what particular taxes might be due or what particular returns might have to be prepared, much less when such returns were required to be filed. He never inquired about his general legal obligations and duties as the personal representative of his father's estate. Rather, he completely relied on Fielding to take care of everything. In effect, DiRezza instructed Fielding not to bother him except as necessary to present him with documents for his signature.

DiRezza cooperated with Fielding and maintained periodic contact with him. However, he never inquired about Fielding's progress in administering the estate, except in a very general way, and was always satisfied when told that everything was under control and not to worry. He did not, in fact, know what was being done (or not being done) and simply assumed that Fielding was on top of the situation.

On April 30, 1976, DiRezza met with Fielding to execute the Colorado inheritance tax application. On the first page of that return, a response of "Yes" was given to the question "Will Federal Estate Tax Return be Filed?" DiRezza examined the return and asked Fielding to explain the nomenclature. He also inquired whether all State and Federal taxes were going to be taken care of, and Fielding assured him that they were. He did not, however, specifically inquire about the obligation to file a Federal estate tax return or its due date. DiRezza executed the return, under oath, immediately below the statement that he had read the return and that the recitals therein were true.

In May 1976, DiRezza received the first of several letters from the Internal Revenue Service inquiring about the decedent's estate tax return.[8] He contacted Fielding, who reassured him that there was no cause for concern.[9] He did not, however, explain to DiRezza why he thought so. DiRezza did not ask why, nor did he inquire whether Fielding had obtained an extension of time to file. Rather, he simply assumed that all was well.

In September 1976, Fielding retained a C.P.A. to prepare the estate tax return. The preparer completed and executed the return on December 17, 1976; DiRezza executed it on January 4, 1977. The return was filed with the Ogden Service Center on January 10, 1977. It reported a gross estate of $273,417.89. In addition to the specific exemption of $60,000, deductions in the total amount of $57,799.18 were claimed. This amount included $16,000 for the alleged common law wife, $23,100.08 in attorneys' fees, and $10,496.70 for the personal representative's commission.

The additions to tax for late filing and late payment which were assessed against the estate in respect of the tax shown on the return were paid by Fielding. Fielding paid those amounts because he felt responsible for the delinquency.

Finally, Fielding never advised DiRezza, or otherwise led him to believe that a Federal estate tax return was not required to be filed.

### ULTIMATE FINDING OF FACT

DiRezza's reliance on his attorney to prepare and timely file the estate tax return did not constitute reasonable cause for the delinquency.

---

[8]Neither party introduced any of these letters as exhibits so we are not informed of their exact contents.

[9]Fielding erroneously thought that he could not file the Federal estate tax return until the Colorado inheritance tax application had been filed. He also erroneously thought that the filing period for the Federal return had been extended by virtue of a State court action involving a woman who claimed to be the decedent's common law wife. This action had commenced shortly after the decedent's death and was concluded approximately a year later by a cash payment to the woman in exchange for the release of her claim.

## OPINION

### *Issue 1. Jurisdiction*[10]

At the outset, we would like to emphasize that petitioner has not claimed an overpayment or otherwise raised any issue concerning the two previously assessed additions to tax.[11] Accordingly, whether we have jurisdiction over them is an issue which we need not consider or decide. See sec. 6512. Rather, our inquiry is limited to whether we have jurisdiction over the late-filing addition which respondent determined in the statutory notice. For the reasons which follow, we hold that under section 6659(b)(1) we have jurisdiction to redetermine that addition because it "is attributable to a deficiency in tax described in section 6211."

### *A. Statutory Analysis*

Section 6213 confers jurisdiction on this Court to redetermine deficiencies in income, estate, gift, and certain excise taxes. See also secs. 6211–6212 and 6214–6215; Rule 13;[12] see generally sec. 7442. The key section which confers jurisdiction on this Court in the case of additions to tax is section 6659.[13]

---

[10]All section references in this part of the opinion are to the Internal Revenue Code of 1954 as amended and in effect on Sept. 10, 1979, the date on which the statutory notice was issued.

[11]In fact, petitioner expressly states on brief that it "does not contend that the Tax Court has jurisdiction over the Section 6651(a)(1) and Section 6651(a)(2) penalties assessed per the tax return."

[12]All Rule references are to the Tax Court Rules of Practice and Procedure.

[13]SEC. 6659. APPLICABLE RULES.

(a) ADDITIONS TREATED AS TAX.—Except as otherwise provided in this title—

(1) The additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes;

(2) Any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter.

(b) PROCEDURE FOR ASSESSING CERTAIN ADDITIONS TO TAX.—For purposes of subchapter B of chapter 63 (relating to deficiency procedures for income, estate, gift, and certain excise taxes), subsection (a) shall not apply to any addition to tax under section 6651, 6654, or 6655; except that it shall apply—

(1) in the case of an addition described in section 6651, to that portion of such addition which is attributable to a deficiency in tax described in section 6211; or

(2) to an addition described in section 6654 or 6655, if no return is filed for the taxable year.

We note that the Economic Recovery Tax Act of 1981 redesignated sec. 6659 as sec. 6660. Sec. 722(a)(1), Pub. L. 97–34, 95 Stat. 341.

Cf. sec. 6214(a). Accordingly, we begin our analysis with that section.

Section 6659(a) sets forth the general rule that the deficiency procedures applicable to income, estate, gift, and certain excise taxes are equally applicable to additions to tax. However, section 6659(b) provides an exception to the general rule in the case (inter alia) of additions under section 6651. An exception to this exception is provided by section 6659(b)(1) in the case of that portion of such an addition which is attributable to a deficiency in tax as defined by section 6211. Thus, if the addition involved in this case "is attributable to a deficiency," the deficiency procedures would be applicable, and this Court would have jurisdiction.

As previously mentioned, the addition involved herein was determined by respondent in respect of an additional estate tax liability and was determined (i.e., measured) by the amount of that liability. Therefore, it is clear that the addition is "attributable to" that liability. The question, however, is whether that liability constitutes a deficiency.

The term "deficiency" is defined by section 6211(a) to mean—

the amount by which the tax imposed * * * exceeds the excess of—
   (1) the sum of
     (A) the amount shown as the tax by the taxpayer upon his return * * * plus
     (B) the amounts previously assessed * * * as a deficiency, over—
   (2) the amount of rebates * * * made.

No rebates are involved in this case. Moreover, at the time that the additional tax liability was assessed, no amount had been previously assessed as a deficiency. Thus, that liability represented the difference between the "tax imposed" and "the amount shown as the tax by the taxpayer upon his return." In other words, it represented a deficiency within the meaning of section 6211(a). As such, it was subject to the deficiency procedures of subchapter B of chapter 63, including the waiver provisions of section 6213(d).[14]

---

[14]SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT.

(d) WAIVER OF RESTRICTIONS.—The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and

In view of the foregoing, there can be no question that the additional tax liability was assessed as a deficiency. However, one could argue that there was no deficiency *when the statutory notice was sent* because *at that time* the additional tax liability constituted an amount *previously* assessed as a deficiency which, when added to the amount of tax shown on the return, equaled the tax imposed. One inclined to so argue might then conclude that the addition involved herein is not attributable to a deficiency and hence that the Court lacks jurisdiction. Any such conclusion, however, would not be well founded.

Whether a deficiency in the tax exists when the statutory notice is sent is irrelevant *for purposes of section 6659(b)(1)*. We think the section requires that the addition be attributable to tax which has been subjected to the deficiency procedures. See H. Rept. 1217, 86th Cong., 2d Sess. (1960), 1960–1 C.B. 840, 842–843, discussed hereinafter. It distinguishes such an addition from one which is attributable to the tax shown on the return. Only these two categories are recognized. See sec. 301.6659–1(c)(1), Proced. & Admin. Regs. Accordingly, an addition attributable to an amount previously assessed as a deficiency is just as much within the intendment of section 6659(b)(1) as an addition attributable to a deficiency determined as of the date of issuance of the statutory notice. In both cases, the addition is determined (i.e., measured) by tax which is subject to the deficiency procedures and *not* by the tax shown on the return. In other words, it is the *type* of assessment, i.e., self-assessment (liability per the return) versus deficiency assessment (additional liability), which is determinative for purposes of section 6659(b)(1). Cf. *Fendler v. Commissioner*, 441 F.2d 1101 (9th Cir. 1971).

This view is supported by the legislative history[15] of section 6659(b)(1).

---

collection of the whole or any part of the *deficiency.* [Emphasis added.]

The prescribed notice, Form 870, is entitled "Waiver of restrictions on assessment and collection of *deficiency* in tax and acceptance of overassessment." (Emphasis added.)

[15]Here, we are reminded of Justice Holmes' aphorism that "a page of history is worth a volume of logic." *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921).

## B. Legislative History

Under the Internal Revenue Code of 1939, additions to tax for late filing were subject to the deficiency procedures if they were measured by a deficiency in tax. However, if they were measured by the tax shown on the return, the deficiency procedures were not applicable. Sec. 291(a), I.R.C. 1939; *United States v. Erie Forge Co.*, 191 F.2d 627 (3d Cir. 1951). See also *Granquist v. Hackleman*, 264 F.2d 9 (9th Cir. 1959), as it relates to the 1939 Code. Thus, in *Erie Forge*, the Third Circuit stated that—

*the Code logically provides that where the penalty is measured by a tax deficiency it is subject to the same procedure as the deficiency*, for if the deficiency is revised by the Tax Court the penalty will be revised along with it. However, where the penalty is based upon an amount which the taxpayer has admitted [on his return] to be due, the Code prescribes the simpler method of collection first outlined [summary assessment]. [*United States v. Erie Forge Co.*, *supra* at 630. Emphasis added.]

Section 6659, as enacted by the Internal Revenue Code of 1954, was intended to conform to the rules under existing law. S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 595 (1954); H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A420 (1954). However, in *Granquist v. Hackleman*, 264 F.2d 9 (9th Cir. 1959), and *Strawberry Hill Press, Inc. v. Scanlon*, 172 F. Supp. 335 (E.D. N.Y. 1959), affd. per curiam 273 F.2d 306 (2d Cir. 1959), the courts held that under the 1954 Code *all* additions to tax for late filing were subject to the deficiency procedures. Cf. *Enochs v. Muse*, 270 F.2d 528 (5th Cir. 1959), holding that under the 1954 Code, additions to tax for failure by individuals to pay estimated income tax were subject to the deficiency procedures. These decisions placed a serious administrative burden on the Commissioner because they forced him to examine many returns, which might not otherwise be examined, in order to insure that "there was no deficiency in tax which might be barred from later assessment because of the restrictions on the issuance of additional 90-day letters under section 6212(c)." H. Rept. 1217, 86th Cong., 2d Sess. (1960), 1960–1 C.B. 840, 841–842. See also S. Rept. 1098, 86th Cong., 2d Sess. (1960), 1960–1 C.B. 843, 845; *Johnston v. Commissioner*, 429 F.2d 804, 806 (6th Cir. 1970).

In 1960, Congress responded by amending section 6659 to

read essentially as it does today. Section 1, Act of May 14, 1960, Pub. L. 86–470, 74 Stat. 132. The committee reports clearly indicate that Congress intended to legislatively over-rule *Granquist* and *Strawberry Hill* and preserve the distinc-tion between additions attributable to the tax shown on the return and those attributable to tax subject to the deficiency procedures. Thus, the House Ways and Means Committee report states as follows:

*In general*
    The first section of the bill amends section 6659(b) of the Internal Revenue Code of 1954 so as to provide the procedure to be followed in assessing certain additions to tax. Under present law, section 6659(a) states that, except as otherwise provided, additions to tax * * * shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes, and any reference in the code to "tax" imposed by the code also refers to such additions to tax * * * Under the amendment, the deficiency procedures * * * in the case of income, estate, and gift taxes are made inapplicable to certain additions to tax.

*Application of deficiency procedures*
    Section 6659(b), as amended by the bill, provides, with two exceptions, that subsection (a) of section 6659 shall not apply for purposes of applying the deficiency procedures * * * to any addition to tax under section 6651 (relating to failure to file return) * * *
    Under the first exception, paragraph (1) of section 6659(b) provides that, in the case of an addition to tax under section 6651 for failure to file a timely return, the deficiency procedures will apply to that portion of such addition which is attributable to a deficiency in tax described in section 6211. *Therefore, if the tax (other than additions to tax) is subject to the deficiency procedures, the additions to tax attributable thereto are likewise subject to the deficiency procedures.* The deficiency procedures do not apply to any addition to tax under section 6651 which is attributable to the tax shown on the return. * * *

    *            *            *            *            *            *            *

    These two exceptions are consistent with present procedural practices.
    [H. Rept. 1217, 86th Cong., 2d Sess. (1960), 1960–1 C.B. 840, 842–843. Emphasis added.]

See also S. Rept. 1098, 86th Cong., 2d Sess. (1960), 1960–1 C.B. 843, 845–846.

The language underscored above demonstrates that Congress intended to exclude from the deficiency procedures only those additions which are attributable to the tax shown on the return. The report specifically states that "if the tax * * * is subject to the deficiency procedures, the additions to tax attributable thereto are likewise subject to the deficiency

procedures." Certainly, this must mean that section 6659(b)(1) is applicable to an addition which is attributable to an additional tax liability proposed by the Commissioner and agreed to by the taxpayer. Such a liability is unquestionably subject to the deficiency procedures, including section 6213(d). Accordingly, the addition attributable thereto is also subject to those procedures. The fact that the additional tax liability is assessed pursuant to a waiver prior to the issuance of the statutory notice is therefore irrelevant. What is relevant is the fact that the addition is attributable to tax which has been subjected to the deficiency procedures rather than to the tax shown on the return.

## C. Administrative Practice and Policy

Our view is further supported by the fact that a contrary conclusion would have negative administrative and policy impact.

First, if our jurisdiction over late-filing additions turned on whether a deficiency in tax existed at the time that the statutory notice was sent, any petitioner could confer jurisdiction on this Court by the simple expedient of postponing concession of the tax until after the "critical" date. See, e.g., *Estate of Zavesky v. Commissioner*, T.C. Memo. 1981–572, where the petition alleged no error with respect to the estate tax deficiency but disputed the late-filing addition. The administrative settlement of tax deficiencies would thus be discouraged, and the Commissioner would be forced to issue statutory notices determining deficiencies over which there was absolutely no dispute.

Second, a contrary conclusion would serve to create a trap for all but the most sophisticated taxpayers. Unless expert in the legal intricacies of this Court's jurisdiction, many taxpayers, finding themselves in agreement with respondent's proposed adjustment to their tax liability, would execute a waiver, not realizing that they were thereby foreclosing their opportunity to seek prepayment review by this Court of the addition for late filing.

Moreover, a contrary conclusion would unnecessarily restrict the jurisdiction of this Court and would thereby contravene the expectation of taxpayers that they would be afforded prepayment review of additions to tax attributable to addition-

al tax liabilities. This Court was created in order "to furnish to the taxpayer a forum in which he could litigate liabilities connected with his taxes without being required to resort to the cumbersome and inequitable processes of paying the amount in question and suing for its recovery." *Newsom v. Commissioner*, 22 T.C. 225, 227 (1954), affd. per curiam 219 F.2d 444 (5th Cir. 1955). See tit. IX, Revenue Act of 1924, ch. 234, 43 Stat. 336; H. Rept. 179, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 241, 246–247; S. Rept. 398, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 266, 271–272. In *Looper v. Commissioner*, 73 T.C. 690, 695 (1980), we stated:

Congress has afforded taxpayers a prepayment forum—this Court—in which to contest the Commissioner's asserted deficiency. Consonant therewith, the jurisdiction provisions of the Code have been read in a manner which facilitates rather than impedes access to the Tax Court forum.

See also *Levy v. Commissioner*, 76 T.C. 228, 231 (1981); *Lewy v. Commissioner*, 68 T.C. 779, 781 (1977); *Traxler v. Commissioner*, 61 T.C. 97, 100 (1973), modified 63 T.C. 534 (1975) (where the statute "is capable of two interpretations, we are inclined to adopt a construction which will permit us to retain jurisdiction without doing violence to the statutory language").

Finally, this Court has unquestioned jurisdiction in the case of additions under sections 6653(a) and 6653(b), notwithstanding the fact that the taxpayer executes a waiver prior to the issuance of the statutory notice. Sec. 6659(a); cf. *Stewart v. Commissioner*, 66 T.C. 54 (1976). Unless compelled by statute (which we think we are not), there is no reason to establish a different rule in the case of a late-filing addition attributable to an additional tax liability.[16]

## D. Conclusion

There is nothing in section 6659(b)(1), in its legislative history, or in its long-standing and consistent application to

---

[16]Cf. *Estate of Scarangella v. Commissioner*, 60 T.C. 184, 186–187 (1973), a case in which the addition for late filing was attributable to the tax shown on the estate tax return. In granting respondent's motion to dismiss for lack of jurisdiction, we recognized "the difficult position in which petitioners are placed by not being able to come to the Tax Court to test the validity of the respondent's action in asserting the penalty." As stated above, an even greater number of taxpayers should not be placed unnecessarily in such a position.

indicate that the deficiency to which the late-filing addition is attributable must remain unassessed if the deficiency procedures are to apply to the addition. Rather, the only requirement is that the addition be attributable to tax which is subject to the deficiency procedures. In the present case, it is clear that the additional tax liability was subject to the deficiency procedures, including section 6213(d). Accordingly, we hold that we have jurisdiction to redetermine the addition involved herein because it is attributable to "a deficiency in tax described in section 6211."

## Issue 2. Reasonable Cause

In the case of a failure to file an estate tax return within the time prescribed by law, section 6651(a)(1)[17] provides for an addition to tax in the amount of 5 percent of the tax required to be shown on the return for each month (or part thereof) during which such failure continues, but not to exceed 25 percent in the aggregate. See sec. 301.6651–1(a)(1), Proced. & Admin. Regs. The addition can be avoided, however, if the taxpayer establishes that the failure to timely file was due to reasonable cause and not due to willful neglect. If a taxpayer exercises ordinary business care and prudence and is still unable to file the return within the statutory period, then the delay is due to a reasonable cause. Sec. 301.6651–1(c)(1), Proced. & Admin. Regs. This standard for determining reasonable cause has long been universally accepted. *Sanders v. Commissioner*, 225 F.2d 629, 636–637 (10th Cir. 1955), affg. 21 T.C. 1012 (1954); *Estate of Rapelje v. Commissioner*, 73 T.C. 82, 89 (1979).

The burden of proof is, of course, on the petitioner to establish not only the absence of willful neglect but also the existence of reasonable cause. *Robinson's Dairy, Inc. v. Com-*

---

[17]SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) ADDITION TO THE TAX.—In case of a failure—

(1) to file any return under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *

*missioner*, 302 F.2d 42, 45 (10th Cir. 1962), affg. 35 T.C. 601 (1961); *Electric & Neon, Inc. v. Commissioner*, 56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); Rule 142(a). Here, however, respondent has apparently conceded that the delinquency was not due to willful neglect.[18] Accordingly, we turn to the question whether DiRezza exercised ordinary business care and prudence in relying on his attorney to prepare and timely file the estate tax return.

Whether reasonable cause exists is, of course, primarily a question of fact to be determined from all of the facts and circumstances in a particular case. *Estate of Duttenhofer v. Commissioner*, 49 T.C. 200, 204 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969). DiRezza contends that reasonable cause exists in this case because he did not specifically know of the requirement to file a Federal estate tax return and relied on Fielding to file all necessary tax returns in a timely fashion. We disagree.

It is well established that ignorance of the need to file a tax return will not, in and of itself, excuse a taxpayer from liability for the addition to tax for late filing. *Estate of Lammerts v. Commissioner*, 54 T.C. 420, 445 (1970), affd. per curiam on this issue 456 F.2d 681, 683 (2d Cir. 1972). It is also well established that a personal representative has a positive duty to ascertain the nature of his or her responsibilities as the fiduciary of the estate and that "This duty is not satisfactorily discharged by delegating the entire responsibility for filing the estate tax return to the attorney for the estate." *Estate of Lammerts v. Commissioner, supra* at 446; *Estate of Geraci v. Commissioner*, T.C. Memo. 1973–94, slip op. at 5, affd. per curiam 502 F.2d 1148 (6th Cir. 1974); see *Estate of Duttenhofer v. Commissioner*, 49 T.C. at 204–206. Rather, the personal representative must, at a minimum, ascertain the due date of the return and take appropriate steps to insure that the

---

[18]For example, the justification for the late-filing addition set forth in the statutory notice is limited to petitioner's failure to establish reasonable cause:

"Since the estate tax return was not filed within the time prescribed by law and you have not shown that the failure to file on time was due to reasonable cause, 25 percent of the tax is added as provided by section 6651(a)(1) of the Internal Revenue Code."

Moreover, on brief respondent confines his argument to the question whether DiRezza's reliance on his attorney was sufficient to establish reasonable cause.

attorney act diligently to fulfill the filing obligation. *Estate of Rapelje v. Commissioner*, 73 T.C. 82, 89–90 (1979); *Estate of Mayer v. Commissioner*, 43 T.C. 403, 406 (1964), affd. per curiam 351 F.2d 617 (2d Cir. 1965); *Estate of Geraci v. Commissioner, supra.*

We do not think DiRezza satisfied any of the above duties. Rather, we think his general delegation of responsibility to his attorney was tantamount to an abdication of his duties as the personal representative of the estate. For example, DiRezza never bothered to inquire about his legal obligations as personal representative. Instead, he instructed Fielding to take care of everything, including the preparation and filing of all necessary tax returns. In effect, he directed his attorney not to disturb him except as necessary to present him with documents for his signature. As Fielding testified: "My instructions were to give him only the documents he was to sign."

At the time he retained Fielding, DiRezza was not specifically aware of the requirement to file a Federal estate tax return. However, he was very conscious of taxes in general and the need to file returns on behalf of the decedent. He specifically instructed Fielding to prepare and file all necessary tax returns. Nevertheless, he never bothered to inquire about what particular taxes might be due or what particular returns might have to be prepared, much less when such returns were required to be filed. Even after DiRezza specifically learned of the requirement to file a Federal estate tax return, he never bothered to inquire why it had not been filed, whether Fielding had applied for an extension, or when Fielding intended to file it.

The fact that DiRezza cooperated with Fielding and maintained periodic contact with him is entitled to little weight, given the particular facts of this case. DiRezza only inquired about Fielding's progress in administering the estate in a very general fashion and was always satisfied when told that everything was under control and not to worry. In point of fact, he did not know what was being done (or not being done), but merely assumed that all was well.

In April and May 1976, two events occurred which put DiRezza on actual notice of the need to file a Federal estate tax

return.[19] In April he executed the Colorado inheritance tax application. The first page of that return gave an affirmative response to the question whether a Federal estate tax return would be filed. DiRezza examined the return and asked questions about it. He also inquired whether all State and Federal taxes were going to be taken care of. As usual he was reassured that everything was under control. As usual he did not pursue the matter further.

In May 1976, DiRezza received the first of several letters from the IRS inquiring about the decedent's estate tax return. Although none of the letters were introduced as exhibits in this proceeding, DiRezza testified at trial as follows:

> Q: Did you personally find out *when* the Federal estate tax return was due? [Emphasis added.]
> A: Yes: I got a letter from the IRS * * *

DiRezza contacted Fielding about the letter and was reassured that there was no cause for concern. However, he did not inquire of Fielding why he thought so, or ask him whether he had applied for an extension. He did not even inquire as to when Fielding intended to file the estate tax return. Rather, he was once again content to assume that his attorney was "on top" of the situation. In this regard, DiRezza's testimony on direct examination is most revealing:

> Q: When did the letters from the IRS start coming?
> A: I really don't have the date on those, but it was more than a year later. But I had called him about it, and he said that he was on top of it, so I just let it go at that.
> Q: So you did no further follow up?
> A: Well, he was taking care of it. I thought he had gotten an extension. *I didn't really know what he was doing.* [Emphasis added.]

This is not a case involving a complicated area of tax law where a layman could not reasonably be expected to know whether a tax return is required. See *West Coast Ice Co. v. Commissioner*, 49 T.C. 345, 351–352 (1968). Nor is it a case

---

[19]See *United States v. Kroll*, 547 F.2d 393, 396 (7th Cir. 1977), wherein the Court of Appeals stated as follows:

"Whether or not Kroll [the executor] knew the date of the deadline (October 13, 1968) before it passed, he was apprised on January 9, 1969 that the deadline had passed three months previously. His reliance on Dill [the attorney] from this date onwards was not an exercise of ordinary business care and prudence. [fn. ref. omitted.]"

where the taxpayer relies on a professional tax consultant who advises him that a tax return is not required.[20] See *Estate of Christ v. Commissioner*, 54 T.C. 493, 553–554 (1970), affd. on another issue 480 F.2d 171 (9th Cir. 1973). This is a case where the estate's personal representative simply failed in his duty to ascertain the due date of the return and to take appropriate steps to insure that the attorney prepare and file it on time.

DiRezza cites many cases in support of his position but relies primarily on four: *Estate of DiPalma v. Commissioner*, 71 T.C. 324 (1978); *Rohrabaugh v. United States*, 611 F.2d 211 (7th Cir. 1979); *Gray v. United States*, 453 F. Supp. 1356 (W.D. Mo. 1978); and *Sheehan v. United States*, an unreported case (N.D. Ohio 1979, 44 AFTR 79–6127, 79–1 USTC par. 13,304). None of these cases, however, dictates a conclusion contrary to the one that we have reached.

*Estate of DiPalma v. Commissioner, supra*, is clearly distinguishable. There, the executrix was a housewife who had been married for 45 years and had never had any business experience. We held that her reliance on the attorney was reasonable because he led her to believe that the presence of litigation concerning the assets of the estate justified the delay in filing the estate tax return. Here, however, DiRezza's attorney never misled him about the reason for the delay in filing the return.

*Rohrabaugh v. United States, supra*, is also clearly distinguishable, if for no other reason than there the estate tax return was filed within 4 days after the administratrix first became aware that it had not been filed.[21] Here, however, the return was not filed until January 10, 1977, approximately 8 months after DiRezza executed the Colorado inheritance tax application and received the first of several letters from the Internal Revenue Service inquiring about the decedent's Federal estate tax return. Moreover, *Rohrabaugh* has argu-

---

[20]Fielding emphatically testified that he never advised DiRezza that a Federal estate tax return was not required to be filed. Moreover, there was never any question whether such a return was required.

[21]See also *Estate of Zavesky v. Commissioner*, T.C. Memo. 1981–572. There the estate tax return was filed promptly—within about 30 days—after the executrix first learned of the failure to file. Because the case was appealable to the Seventh Circuit, we followed *Rohrabaugh* and held that the delinquency was excused.

ably lost some of its vitality after *Fleming v. United States*, 648 F.2d 1122, 1126 (7th Cir. 1981).[22]

In *Gray v. United States, supra* at 1360, the District Court stated that "If the duty to file a return is personal and nondelegable, it is only when the taxpayer has actual knowledge of the date the return in question is due." However, in *Rapelje v. Commissioner*, 73 T.C. at 89–90 n. 7, we flatly disagreed and stated as follows:

> Given that the executor is aware of the necessity of filing a return, we think it reasonable to presume that he is aware of the existence of a filing deadline. Based on that presumption, we think the executor fails to exercise ordinary care if he does not ascertain the due date of the return.

Furthermore, it is questionable whether *Gray* has any vitality after *Boeving v. United States*, 650 F.2d 493, 495 (8th Cir. 1981) ("The executor or executrix has a personal and nondelegable duty to file a timely return, and reliance on the mistaken advice of counsel is not sufficient to constitute 'reasonable cause' for failing to fulfill that duty"); and *Estate of Lillehei v. Commissioner*, 638 F.2d 65, 66 (8th Cir. 1981), affg. a Memorandum Opinion of this Court ("an executor has a personal and nondelegable duty to ascertain the due date of the return and to insure that the attorney prepares and files the return on time").

Finally, in *Sheehan v. United States, supra*, the District Court held that the executrix did not exercise ordinary business care and prudence in relying on an attorney to file the estate tax return when she had reason to believe that he would not file it on time. Petitioner cites *Sheehan* for the proposition that the "test" for reasonable cause is "whether a reasonable person would question her attorney as to when the estate tax return was due and when it would be filed." We question whether *Sheehan* fashioned any such test; however, if it did, we disagree with such test. Absent exceptional circumstances such as those in *Estate of DiPalma v. Commissioner, supra*, the personal representative's duty to ascertain the due

---

[22]In *Fleming*, the Seventh Circuit reaffirmed the principles that it had previously set forth in *United States v. Kroll*, 547 F.2d 393, 396 (7th Cir. 1977), including its holding that "when there is no question that a return must be filed, the taxpayer has a personal, nondelegable duty to file the tax return when due."

date of the return subsists regardless of his or her degree of confidence in the attorney.

Accordingly, we hold that DiRezza's reliance on his attorney to prepare and timely file the estate tax return did not constitute the exercise of ordinary business care and prudence. Hence, we sustain respondent's determination that petitioner is liable for the addition to tax for late filing.

*Decision will be entered for the respondent.*

Reviewed by the Court.

NIMS, *J.*, concurring in part and dissenting in part: As the trier of the facts in this case, I agree with the majority's findings of fact, and, since the Court holds that we have jurisdiction to decide this case, I also agree with the majority's conclusion that there was no reasonable cause to justify petitioner's failure to file the estate tax return on time. It is of course obvious, but essential, nevertheless, to point out that had we found jurisdiction lacking, the underlying controversy would have been rendered moot. *Dillman Bros. Asphalt Co. v. Commissioner*, 64 T.C. 793 (1975).

I cannot agree, however, with the majority's conclusion that we have jurisdiction. It has always been my understanding, to put it as succinctly as possible, that if you paid the tax before the issuance of a deficiency notice, you lost access to the Tax Court. I feel certain that it will come as a distinct surprise to others, now, to be disabused of this almost universally held notion, at least in the context of this case. I am also dismayed that we have opened another window through which we will now look behind the statutory notice (none too reluctantly this time) to see what happened at the administrative level. Cf. *Jackson v. Commissioner*, 73 T.C. 394 (1979).

While I have mixed feelings about the majority's efforts to preserve the Commissioner's alleged administrative practice regarding the late-filing penalty, albeit one until now unsanctioned by law, the logic by which the majority reaches its conclusions simply does not stand up under an even moderately rigorous analysis of the relevant Code sections. The legislative history, quoted so extensively and upon which the

majority so heavily relies, while interesting and significant, is largely irrelevant, since even a casual reading makes perfectly clear that nowhere was Congress focusing its attention on the question presented by this case. As a consequence, we have no choice but to turn to the statute, itself, for answers to our questions. See *Warrensburg Board & Paper Corp. v. Commissioner*, 77 T.C. 1107, 1111(1981).

As stated in our findings of fact, no estate tax deficiency was determined in the deficiency notice, although a $552 addition to tax under section 6651(a)(1) was determined. Inasmuch as the Court has jurisdiction to redetermine the section 6651 addition to tax only under certain circumstances, as hereinafter explicated, a close (even though tedious) reading of relevant sections 6659[1] (relating to "Additions Treated as Tax" and "Procedure for Assessing Certain Additions to Tax") and 6211(a)[2] ("Definition of a Deficiency") becomes essential. (The provisions of section 6211(b) are not germane to this inquiry.)

First, section 6659: Subsection (a) gives the general rule

---

[1]Sec. 6659 reads as follows:

SEC. 6659. APPLICABLE RULES.

(a) ADDITIONS TREATED AS TAX.—Except as otherwise provided in this title—

(1) The additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes;

(2) Any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter.

(b) PROCEDURE FOR ASSESSING CERTAIN ADDITIONS TO TAX.—For purposes of subchapter B of chapter 63 (relating to deficiency procedures for income, estate, gift, and certain excise taxes), subsection (a) shall not apply to any addition to tax under section 6651, 6654, or 6655; except that it shall apply—

(1) in the case of an addition described in section 6651, to that portion of such addition which is attributable to a deficiency in tax described in section 6211; or

(2) to an addition described in section 6654 or 6655, if no return is filed for the taxable year.

[2]Sec. 6211(a) reads as follows:

SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, 44, and 45 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, 44, or 45 exceeds the excess of—

(1) the sum of

(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b) (2), made.

that, except as otherwise provided in title I, additions to tax, etc., provided by chapter 68 are to be assessed, collected, and paid in the same manner as taxes, and any reference to "tax" in title I includes additions to tax. In other words, the usual deficiency procedures apply to additions to tax.

Then, subsection (b) contains a main exception and two exceptions to the main exception:

*Main exception* (flush language of section 6659(b)). —The usual deficiency procedures for income, estate, gift, and certain excise taxes do not apply to additions under section 6651 (late filing or late paying), section 6654 (individual failure to pay estimated income tax), and section 6655 (corporation failure to pay estimated income tax), but—

*Exception (b)(1).* —The deficiency procedures *do* apply to a section 6651 late-filing addition attributable to a deficiency in tax described in section 6211, and—

*Exception (b)(2).* —The deficiency procedures also *do* apply to section 6654 and section 6655 additions if no return was filed.

The exception and exceptions to exceptions contained in section 6659(b) have no application to additions for negligence (sec. 6653(a)), fraud (sec. 6653(b)), or any other misfeasance beyond late filing, etc., and failure to pay estimated income tax. Thus, in *Stewart v. Commissioner*, 66 T.C. 54 (1976), we held that we had jurisdiction in a case where the deficiency notice determined an addition to tax for fraud under section 6653(b), even though petitioners had previously paid, and the Commissioner had previously assessed, an additional income tax liability, so that no income tax deficiency, but only an addition for fraud, was asserted in the deficiency notice. Although not the basis for the result in *Stewart*, section 6659(a) clearly provides that the deficiency procedures include the addition for fraud, since section 6653(b) is not within the 6659(b) exception.

Since section 6659(b) *waives* the deficiency procedures for section 6651 late-filing additions unless the addition is attributable to a "deficiency in tax described in 6211," section 6211 must next be scrutinized for the definition of "deficiency." The definition of deficiency for section 6211 may fairly be paraphrased as follows:

A deficiency is—

the amount of income, estate, and gift taxes and certain excise taxes actually due, which exceeds the excess of—

(1) the amount shown on the return, plus amounts *previously* (i.e., *previous to the deficiency notice) assessed (or collected without assessment)* as a deficiency, over

(2) the amount of rebates made.

Plainly, by the use of the term "previously assessed" in section 6211(a)(1)(B), Congress intended this section to speak as of the time of issuance of the statutory notice. Therefore, applying the numbers in this case to the words of the statute, it will be seen that the section 6211 deficiency is zero, as follows:

| | | |
|---|---|---:|
| (a) | Estate tax imposed ................................. | $38,018.76 |
| (b) | Less: Reported on return........... $35,810.76 | |
| | Additional assessment ....... 2,208.00 | |
| | | 38,018.76 |
| (c) | Deficiency ........................................... | 0 |

(There were no rebates made.)

Applying these numbers to section 6659(b), one finds that since the deficiency in tax described in section 6211 is zero, the exceptions to the exception do not apply. Therefore, the main 6659(b) exception *does* apply, namely, the deficiency procedures for income, estate, gift, and certain excise taxes are not available as to the section 6651 late-filing addition in this case, and this Court consequently lacks jurisdiction. Under this posture of the case, the immediate assessment of the $552 late-filing addition would appear to be available to the Commissioner.

I am cognizant that in Rev. Rul. 78–20, 1978–1 C.B. 441, the Commissioner has taken a view which is contrary to the majority's holding here. He there equates previously assessed "adjustments" to a deficiency within the meaning of section 6211(a). With this conclusion I cannot agree.

What the majority fails to squarely deal with is the troubling language of section 6211(a)(1)(B): the reference, there, to amounts previously assessed or collected "as a deficiency."[3] Conceivably an argument might have been made

---

[3]What we have here is, in effect, a word used to define itself, since the *definition* of "deficiency" includes amounts assessed, etc. "as a deficiency."

that these words support a relaxation under section 6659(b)(1) of the technical and traditional concept of "deficiency." Nevertheless, since section 6211 is the statutory definition of deficiency, the reference in section 6211(a)(1)(B) (which is itself part of the definition) to assessment or collection of amounts "as a deficiency" strikes me as being at best a puzzling tautology. It might be speculated that, as used in this context, the word "deficiency" was intended to be understood in its lay, rather than technical, sense; i.e., as an "additional amount due." I doubt, however, that this interpretation can justifiably be bootstrapped, as the majority sub silentio has done, up to a "deficiency in tax described in section 6211." Since section 6211(a)(1)(B) makes perfect sense without the words "as a deficiency," one is forced to conclude that these words are nothing more than an artless surplusage. Accordingly, I can only conclude that "deficiency" as used in section 6659(b)(1) was intended in its universally understood sense; i.e., a deficiency existing at the time of the statutory notice. But if the tax has been paid, no valid statutory notice, and no Tax Court jurisdiction.

*Hannan v. Commissioner*, 52 T.C. 787 (1969), does not require a contrary result. In that case, respondent moved to dismiss the petition on the ground that no deficiency, in fact, existed. The deficiency notice advised the taxpayers that "income tax deficiencies" and additions to tax had been determined, although in fact the so-called deficiencies merely reflected an underpayment by the taxpayers of the tax on amounts they themselves reported on their returns, and not adjustments made by the Commissioner. We held that the mere fact that the Commissioner asserted deficiencies in tax was sufficient to vest jurisdiction in this Court. In the case before us, no such deficiencies have been asserted.

As a final matter, I can perceive of no reason why the result I would here reach would produce undue administrative or policy difficulties. If the taxpayer and the Revenue Service resolve their tax differences short of the issuance of a statutory notice, there would appear to be no policy justification for preventing the Service from immediately assessing the late-filing addition. To answer the majority's concern for those who are not "sophisticated," I would suggest that such individuals would easily be put on notice of any impending

late-filing addition by the settlement documents. Surely, the majority is not suggesting the likelihood of the assessment of a "surprise" late-filing addition by the Revenue Service after a case has been settled.

EKMAN, *J.*, agrees with this concurring and dissenting opinion.