T.C. Memo. 1997-346


UNITED STATES TAX COURT


WILLIAM L. REESE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18442-95.                    Filed July 29, 1997.


1.  <u>Held</u>:  P is taxable on a pension plan distribution because he failed to roll over that distribution within the 60-day period prescribed by sec. 402(a)(5)(C), I.R.C.  <u>Held</u>, <u>further</u>, P is liable for a 10-percent additional tax under sec. 72(t), I.R.C., on that distribution.

2.  <u>Held</u>, <u>further</u>, P is liable for a 10-percent additional tax under sec. 72(t), I.R.C., on a portion of a distribution from an individual retirement account.

3.  <u>Held</u>, <u>further</u>, sec. 6651(a)(1), I.R.C., addition to tax for failure to file timely return sustained.

4.  <u>Held</u>, <u>further</u>, sec. 6654(a), I.R.C., addition to tax for failure to pay estimated tax sustained.


William L. Reese, pro se.

Dianne Crosby and Christine Keller, for respondent.

MEMORANDUM OPINION

HALPERN, Judge:  By notice of deficiency dated June 19, 1995, respondent determined a deficiency in petitioner's Federal income tax for 1992 of $23,959 and additions to tax for that year under sections 6651(a)(1) and 6654(a) of $5,916.25 and $1,029.42, respectively.  Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are (1) whether a pension plan distribution to petitioner is taxable pursuant to section 402(a)(1) and whether petitioner is liable for a 10-percent additional tax under section 72(t) on that distribution, (2) whether petitioner is liable for a 10-percent additional tax under section 72(t) on a portion of a distribution from an individual retirement account, and (3) whether petitioner is liable for the additions to tax.  The parties have stipulated various facts, which we so find.  The stipulation of facts filed by the parties, with accompanying exhibits, is incorporated herein by this reference.  We need find few facts in addition to those stipulated.  Accordingly, we shall not separately set forth our findings of fact and opinion, and the additional findings of fact that we must make are contained in the discussion that

follows. Petitioner bears the burden of proof on all questions of fact. Rule 142(a).

## I. Background

Petitioner resided in Reston, Virginia, when the petition was filed.

During 1992, until his employment was terminated on January 20, 1992, petitioner was employed by Unisys Corporation (Unisys). Petitioner was a participant in the Unisys Savings Plan (the plan). The plan is an "I.R.C. § 401(k) plan". On January 20, 1992, petitioner requested an immediate total distribution of his vested balance in the plan (the request).

Pursuant to the request, two payments were made to petitioner in 1992, $8 in April and $56,932 on December 18, totaling $56,940 (the 1992 distribution). Unisys informed petitioner that $86.42 invested in a "Mutual Benefit Contract" and $7,021.63 invested in an "Executive Life Contract" (together, the contract amounts) remained in his plan account and were considered unavailable for distribution due to pending litigation involving those investments.

During the 60-day period beginning on December 19, 1992, petitioner did not "roll over" into another "qualified plan" the 1992 distribution.

Beginning in April 1994, Unisys began to make payments to petitioner of a portion of the contract amounts. As of the date

of the trial in this case, Unisys had not completed its payment of the contract amounts.

In 1992, petitioner also received an individual retirement account distribution of $6,215 from U.S. Trust Co. (the U.S. Trust Co. distribution). Petitioner is required to include $638 of that amount in his gross income for 1992.

II. Discussion

A. The 1992 Distribution

1. Introduction

The question with respect to the 1992 distribution is whether that distribution is taxable to petitioner for 1992 because of his failure to roll over the distribution within 60 days of the receipt thereof. Petitioner argues that, because he has not yet (at least as of the date of the trial) received full payment of his balance under the plan, the 60-day rollover period has yet to commence (so that, we assume, it is not yet possible to determine whether he is taxable on the 1992 distribution). Respondent argues that, because petitioner did not roll over the 1992 distribution within 60 days, he is taxable on it for 1992. We agree with respondent.

2. Pertinent Provisions of the Statute

The parties appear to be in agreement that the plan meets the requirements of section 401(a) and that there is a trust forming a part of the plan that is exempt from income tax under section 501(a). That being so, distributions from the trust

(including the 1992 distribution) are governed by section 402(a)(1).  That section provides generally that "the amount actually distributed to any distributee * * * shall be taxable to him, in the year in which so distributed, under section 72 (relating to annuities)."  There is an exception to that rule of taxability for certain "rollover amounts".  Section 402(a)(5)(A) provides:

> (A)  General rule.--If--
>
> (i) any portion of the balance to the credit of an employee in a qualified trust is paid to him,
>
> (ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and
>
> (iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,
>
> then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

The transfer, however, must be made within 60 days of receipt. Sec. 402(a)(5)(C) ("Subparagraph (A) shall not apply to any transfer of a distribution made after the 60th day following the day on which the employee received the property distributed.").

That would seem to be the end of it for petitioner with respect to the 1992 distribution, which was not transferred to an eligible retirement plan within the 60-day period prescribed by statute.  There is another restriction on rollovers, however,

that petitioner would have us construe in his favor.  Section

402(a)(5)(B) provides in pertinent part:

> (B)  Maximum amount which may be rolled over.--In
> the case of any qualified total distribution, the
> maximum amount transferred to which subparagraph (A)
> applies shall not exceed the fair market value of all
> the property the employee receives in the distribution,
> reduced by the employee contributions (other than
> accumulated deductible employee contributions within
> the meaning of section 72(o)(5)).  In the case of any
> partial distribution, the maximum amount transferred to
> which subparagraph (A) applies shall not exceed the
> portion of such distribution which is includible in
> gross income (determined without regard to subparagraph
> (A)).

The term "qualified total distribution" is defined in section

402(a)(5)(E)(i)(II) to include "1 or more distributions * * *

which constitute a lump sum distribution within the meaning of

subsection (e)(4)(A)".  In pertinent part, section 402(e)(4)(A)

defines a "lump sum distribution" to mean "the distribution or

payment within one taxable year of the recipient of the balance

to the credit of an employee which becomes payable to the

recipient * * * on account of the employee's separation from

* * * service".

### 3.  Petitioner's Argument

Petitioner argues that, because in 1992 he did not receive

the contract amounts, the 1992 distribution did not constitute

the balance to the credit payable to him on account of his

separation from service and, thus, was not a completed lump-sum

distribution within the meaning of section 402(e)(4)(A).

Petitioner further argues that the 1992 distribution constituted

an installment of a lump-sum distribution, which lump-sum distribution will not be completed until Unisys completes its payments to him on account of the contract amounts. Only then, petitioner concludes, will the 60-day rollover period begin.

### 4. Analysis

#### a. Partial Distribution

Apparently, petitioner recognizes that it would be futile for him to argue that the 1992 distribution was a "partial distribution", within the meaning of section 402(a)(5)(E)(v). Nothing in the statute lends itself to the argument that, treating the 1992 distribution as one or more partial distributions, the 60-day rollover period has not expired.

#### b. "[B]alance to the credit of an employee"

As stated, section 402(e)(4)(A) incorporates into the definition of a lump-sum distribution the requirement that the distribution or payment constitute the balance to the credit of an employee which becomes payable on account of his separation from service. The Commissioner has interpreted the section 402(e)(4)(A) balance-to-the-credit-of-an-employee requirement (the balance payable requirement) as being satisfied when the recipient receives all funds credited to the employee's account except for the employee's possible share of certain court impounded funds. Rev. Rul. 83-57, 1983-1 C.B. 92. The Commissioner's position in that ruling is not before the Court,

nor has petitioner directly challenged it.  Rev. Rul. 83-57,
supra, 1983-1 C.B. at 92-93, concludes, in part, by stating:

> Any additional distributions representing the
> employee's portion of court-impounded funds released in
> a subsequent year do not constitute a lump sum
> distribution within the meaning of section 402(e)(4)(A)
> of the Code, because the portion would not be payable
> within the same taxable year as the employee's original
> distribution.  * * *

Thus, although it might be argued that the Commissioner has been
liberal in interpreting the balance payable requirement, the
Commissioner has not conceded in Rev. Rul. 83-57, supra, that a
lump-sum distribution can be made or paid in installments
extending over a period greater than one taxable year of the
recipient.  Although, at some future time, petitioner may
challenge Rev. Rul. 83-57, supra, and claim that a distribution
of some portion of the contract amounts constitutes a lump-sum
distribution under the plan, that argument cannot help petitioner
today.

Petitioner directs our attention to Rev. Rul. 60-292, 1960-2
C.B. 153.  That ruling does not support petitioner's argument
that, if the balance to the credit of an employee is not
distributed within one taxable year of the recipient, a lump-sum
distribution may be made or paid in installments extending over
more than one taxable year.  That ruling addresses a prior
version of section 402 (allowing long-term capital gain treatment
on lump-sum distributions made within one taxable year of the
distributee) and states that, if there is a delay in distribution

on account of administrative problems, and the total amount of the distribution is made "in one taxable year of the employee as soon as administratively feasible" after separation from service, the Internal Revenue Service (IRS) will, in the interest of convenience in administration, not require ordinary income treatment for post-separation accruals of income.  Nothing in the ruling supports petitioner's argument.

Petitioner also directs our attention to IRS Publication 575 (for use in preparing 1992 returns), Pension and Annuity Income (Pub. 575).  Pub. 575 contains the Commissioner's explanation of how to report pension and annuity income.  It purports to cover the special tax treatment of lump-sum distributions.  Page 26 contains the following language with respect to rollovers:

> Time for making rollover.  You must complete the rollover by the 60th day following the day on which you receive the distribution from your employer's plan.  <u>In the case of a series of distributions that may constitute a lump-sum distribution, the 60-day period does not begin to run until the last distribution is made</u>.  [Emphasis added.]

The underscored sentence is no authority that a lump-sum distribution may be paid in installments over more than one taxable year of the recipient.  That sentence does no more than explain the language in the Code that a lump-sum distribution may comprise more than one distribution.  See sec. 402(a)(5)(E)(i)(II) ("The term 'qualified total distribution' means 1 or more distributions * * * which constitute a lump sum distribution").  The underscored sentence must be read in light

of the statement on page 15 of Pub. 575 that "[a] lump-sum distribution must be paid within one tax year" and the instruction on page 26 that "[t]o qualify [for a rollover], you must receive your complete share in the plan within one tax year. * * * You can receive it in more than one part." The requirement of section 402(e)(4)(A) is plain; all of the distributions that constitute a lump-sum distribution must be received within one taxable year of the recipient, and we are not free to interpret that requirement as petitioner would have us do. Pub. 575 is correct in concluding that any rollover must be made within 60 days of the last of such distributions within the taxable year. Sec. 402(a)(5)(C).

In sum, petitioner's argument is based on the assertion that he did not receive the balance to the credit payable to him on account of his separation from service, but that assertion does not eliminate the requirement under section 402(e)(4)(A) that a lump-sum distribution be made or paid within one taxable year; at best, petitioner's assertion undermines the characterization of the 1992 distribution as a lump-sum distribution. That position, however, does not advance petitioner's case.

c. Frozen Deposit Rule

Finally, although it is not clear whether petitioner relies on the special rule for frozen deposits found in section 402(a)(6)(H), that rule is of no benefit to him. That rule, among other things, tolls the running of the 60-day rollover

period for an amount transferred to the employee that is a frozen deposit.  No portion of the 1992 distribution was a frozen deposit, see sec. 402(a)(6)(H)(ii), and, thus, as stated, the rule is of no benefit to petitioner.

### 5.  Conclusion

Petitioner failed to roll over the 1992 distribution within the 60 days prescribed by section 402(a)(5)(C) and, thus, is taxable on that distribution for 1992 under the authority of section 402(a)(1).

### B.  10-Percent Additional Tax on Early Distributions from Qualified Retirement Plans

Section 72(t)(1) imposes an additional tax of 10 percent of amounts received from qualified retirement plans (as defined in section 4974(c)) that are includable in gross income.  Section 72(t)(2) contains certain exceptions.  Respondent determined that such additional tax was due from petitioner on account of his receipt of the 1992 distribution and the U.S. Trust Co. distribution.  With respect to the U.S. Trust Co. distribution, respondent now concedes that only $638 of that distribution is subject to the additional tax.

Petitioner has made no argument with respect to the section 72(t) additional tax, except by implication of his argument that the 1992 distribution is not taxable.  We rejected that argument supra section II.A. p.4, and petitioner has not proven that any of the exceptions contained in section 72(t)(2) applies.

Accordingly, we sustain respondent's determination of an additional tax with respect to the 1992 distribution and $638 of the U.S. Trust Co. distribution.

C. Addition to Tax for Failure To File Return

Section 6651(a)(1) provides that, in the case of a failure to file an income tax return by the due date, there shall be imposed an addition to tax of 5 percent of the amount of tax required to be shown as tax on such return for each month or portion thereof during which the failure continues, not exceeding 25 percent in the aggregate, unless such failure is due to reasonable cause and not due to willful neglect. In the notice of deficiency, respondent determined an addition to tax under that section in the amount of $5,916.25. In the petition, petitioner assigns error to that determination but avers no facts in support of that assignment.

Petitioner testified that he filed his 1992 return on time, but he admitted that he could not prove that fact. The parties have stipulated a copy of petitioner's 1992 return, which was mailed to respondent's counsel on October 2, 1996. That return shows petitioner's signature and a date of April 12, 1993. On that return, petitioner claims an overpayment of $230. Petitioner has produced no evidence that he ever received any refund or other credit for 1992. Petitioner's uncorroborated testimony that he filed his 1992 return on time is self-serving, and we are unwilling to, and need not, accept that testimony at

face value.  See, e.g., Day v. Commissioner, 975 F.2d 534, 538 (8th Cir. 1992), affg. in part, revg. in part T.C. Memo. 1991-140; Liddy v. Commissioner, 808 F.2d 312, 315 (4th Cir. 1986), affg. T.C. Memo. 1985-107.

Petitioner has failed to prove facts to contradict respondent's determination of an addition to tax in the amount of $5,916.25 under section 6651(a).  Therefore, we sustain respondent's determination of an addition to tax under section 6651(a)(1), subject only to recalculation of the deficiency.

D.  Addition to Tax for Failure To Pay Estimated Tax

Section 6654(a) provides for an addition to tax in the case of any underpayment of estimated tax by an individual.  In the notice of deficiency, respondent determined an addition to tax under that section in the amount of $1,029.42.  In the petition, petitioner assigns error to that determination but avers no facts in support of that assignment.  We must decide whether petitioner is liable for the section 6654(a) addition to tax as determined by respondent (the estimated tax issue).

As a preliminary matter, we must decide whether we have jurisdiction to decide the estimated tax issue.  Generally, we have jurisdiction to redetermine additions to tax under the deficiency procedures.  Estate of DiRezza v. Commissioner, 78 T.C. 19, 25-26 (1982).  An addition to tax under section 6654(a), however, is subject to the deficiency procedures, and we have jurisdiction to redetermine such an addition to tax, only if

no return is filed for the taxable year.[1]  See sec. 6665(b)(2);
Meyer v. Commissioner, 97 T.C. 555, 562 (1991) (citing Fendler v.
Commissioner, 441 F.2d 1101 (9th Cir. 1971), and Estate of
DiRezza v. Commissioner, supra).  On brief, respondent states, as
a fact:  "Petitioner did not file an individual federal income
tax return for the year 1992 until October 2, 1996, a few days
before trial of this case."  That statement (the proposed
finding) suggests, perhaps inadvertently, that, on October 2,
1996, petitioner did file his 1992 return.  In support of the
proposed finding, respondent's only references are to (1) the
stipulated fact that petitioner mailed his 1992 return to
respondent's counsel on October 2, 1996, and (2) the exhibit that
constitutes a copy of that return.  Nothing in respondent's brief
indicates that respondent recognizes that the wording of the
proposed finding could raise a question under section 6665(b)(2).
Our standing pretrial order encourages (indeed, requires) the
exchange of documentary evidence before trial.  Therefore, on the
stipulation alone, we are unwilling to conclude that petitioner
filed a return and that we lack jurisdiction.

At trial, petitioner conceded that he did not make any
estimated tax payments, but claimed that an exception applied.
Petitioner did not specify the exception that purportedly applies

---

[1]     In the case of an overpayment of an addition to tax under
sec. 6654(a), see Judge v. Commissioner, 88 T.C. 1175, 1186-1187
(1987).

at trial or on brief and has failed to propose any findings of fact that would lead to the conclusion that any of the exceptions found in section 6654(e) applies to petitioner.  Petitioner has failed to prove facts to contradict respondent's determination of an addition to tax in the amount of $1,029.42 under section 6654(a).  Therefore, we sustain respondent's determination of an addition to tax under section 6654(a), subject only to recalculation of the deficiency.

<u>Decision will be entered</u>

<u>under Rule 155</u>.