ESTATE OF SETH EDWARD YOUNG, JR., DECEASED, HAYDEN HABY, SR. AND SETH EDWARD YOUNG, SR., CO-EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Young v. Commissioner
Docket No. 29433-81
United States Tax Court
T.C. Memo 1983-686; 1983 Tax Ct. Memo LEXIS 103; 47 T.C.M. (CCH) 324; T.C.M. (RIA) 83686; November 17, 1983. Elwood Cluck, for the petitioners. John F. Eiman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: Respondent determined the following deficiency in Federal estate tax and addition to tax for late filing against the Estate of Seth Edward Young, Jr., deceased: Addition to Tax
Deficiency
Section 6651(a)(1) [1]
$190,300
$61,019
*108 After concessions by respondent, the principal issue for decision is whether the decedent's estate tax return was timely filed. If we answer this question in the affirmative, respondent agrees that petitioners are entitled to value the decedent's Texas ranch (the includibility of which in the gross estate is not disputed) at its special use value rather than at its fair market value. [2] On the other hand, if we answer this question in the negative, we must then decide whether the failure to timely file the estate tax return was due to reasonable cause and not due to willful neglect. Secondary issues which we must address include (1) whether respondent is entitled to the presumption of correctness because of his alleged failure to expressly determine in the statutory notice the ultimate fact on which the deficiency and late-filing addition are predicated; (2) whether respondent should be extopped from determining the late-filing addition; and (3) whether respondent or petitioners bear the burden of proof in respect of that addition. *109 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The decedent, Seth Edward Young, Jr., died on March 9, 1977 at the age of 32. He was survived by his wife Kathy Young, a minor son, his parents, and two sisters. At the time of his death the decedent was a resident and domiciliary of the State of Texas. Hayden Haby, Sr. and Seth Edward Young, Sr., the petitioners and the decedent's brother-in-law and father, respectively, resided in Rock Springs, Texas at the time that they filed the petition in this case. Petitioners were named co-independent executors in the decedent's will. On April 25, 1977 they were so appointed by the County Court of Uvalde County, Texas. Petitioners filed a Federal estate tax return (Form 706) on behalf of the decedent with the Internal Revenue Service Center in Austin, Texas. Whether that return was timely filed is the principal issue which we must decide. Facts Relating to the Late Filing Issue
Under section 6075(a) the decedent's estate tax return was due December 9, 1977. On December 5, 1977 petitioners, acting through Robert Coleman, their CPA, filed Form 4768 ("Application for Extension of Time *110 to File U.S. Estate Tax Return and/or Pay Estate Tax") with the Austin Service Center. In their application petitioners requested an extension of time to file under section 6081 and an extension of time to pay under section 6161. In both cases the extension date requested was June 9, 1978. Petitioners attached the following written statement in support of their application: EXTENSION OF TIME TO FILE
An Extension of time to file the Federal Estate Tax Return of Seth Edward Young, Jr. is hereby requested because we are unable to file a reasonably complete return before the due date for the following reasons: 1. The size and complexity of the Estate. 2. Part of the assets of the Estate are located outside of the United States. 3. One of the Co-Independent Executors of the Estate resides in another county. 4. The Co-Independent Executor, living in Uvalde, has undergone surgery and only recently been able to resume normal activity. EXTENSION OF TIME TO PAY
An Extension of time to pay the Federal Estate tax is hereby requested due to the reasons as stated above on the application for Extension of time to file. We have not been able to assemble sufficient *111 accounting information to determine what the tax liability may be, if any. On January 19, 1978 respondent approved the requested extension of time to file and the requested extension of time to pay. Neither petitioner Hayden Haby nor petitioner Seth Edward Young, Sr. was abroad on December 9, 1977, the date on which the estate tax return was due under section 6075(a). On or about June 6, 1978 petitioners, again acting through Mr. Coleman, filed another Form 4768 with the Austin Service Center. In their application petitioners requested a second extension of time to file and a second extension of time to pay. In both cases the extension date requested was September 9, 1978. Petitioners attached the following written statement in support of their application: EXTENSION OF TIME TO FILE
A ninety-day additional extension of time to September 9, 1978 is respectfully requested for filing the Federal Estate Tax Return of Seth Edward Young, Jr. Date of Death March 9, 1977, original extension granted to June 9, 1978. An additional extension of time is necessary in order for us to file a complete and accurate return for the following reasons: 1. The size and complexity *112 of the estate. 2. Some of the assets of a material amount, are located in Australia. 3. One of the Co-Executors of the estate left the United States to go to Australia on June 1, 1978 and will of necessity be there for some time. The purpose of the trip, in addition to the usual supervision that may be required, an attempt is being made to dispose and liquidate some of the Australian Assets, in order to pay a portion of the debts, expenses and taxes of the estate. [Sic]. EXTENSION OF TIME TO PAY
An Extension of time to pay the Federal Estate tax is hereby requested due to the reasons as stated above on the application for Extension of time to file. We have not been able to assemble sufficient accounting information to determine what the tax liability may be, if any. On June 13, 1978 respondent approved the requested extension of time to pay. However, the requested extension of time to file was not approved for the stated reason that "extensions of time to file are limited to a maximum of 6 months." That part of the Form 4768 used by respondent to approve the extension of time to pay (Part IV, line 2) was signed by one of his agents. However, that part *113 of the form used by respondent to disapprove the extension of time to file (Part IV, line 1) was not signed. Mr. Coleman received the Form 4768, as completed by respondent, in mid-June 1978 and saw that the application for extension of time to file hnad not been approved. No inquiry was made concerning the disapproval. On Friday, September 8, 1978 petitioners executed decedent's estate tax return and mailed it to the Austin Service Center on the following day. The return was received by the service center on Monday, September 11, 1978. Petitioners attached to the return an election to value the decedent's Taxas ranch at its special use value under section 2032A. Pursuant to that election they reduced its reported fair market value by $500,000. Petitioners also attached to the return the following affidavit: The delinquency in filing the estate tax return of Seth Edward Young, Jr., date of death March 9, 1977, in excess of extensions of time granted to June 9, 1978, was due to one of the Co-Executors was in Australia gathering records and settling Estate matters. The size and complexity of the estate and the fact that some of the records as well as some of the assets are *114 and were located in Australia, thereby making it difficult to obtain the necessary information to file a complete and timely return. We, the undersigned, co-executors, believe that this constitutes reasonable cause, and respectfully request that any penalties that may be assessed because of the delinquency be waived. During the course of the examination of the decedent's estate tax return, technical advice was requested from respondent's National Office concerning the June 1978 application for extension of time to file. A technical advice Memorandum was issued on January 13, 1981. It provided in pertinent part as follows: ISSUE
Whether the estate's request for an additional extension of time to file the estate tax return should have been granted due to the absence of one of the Co-Executors from the United States. * * * CONCLUSION
Since the Co-Executors were not out of the country on the due date of the return, they do not fall within the exception provided in section 6081(a) concerning taxpayers who are abroad. Accordingly it was not within the director's authority to grant an additional extension of time to file the estate tax return. A copy of the *115 technical advice memorandum was furnished to Mr. Coleman in January 1981. Petitioners subsequently appealed their case to respondent's Appeals Office in Houston. Again acting through Mr. Coleman, they submitted an "amended application" on Form 4768 to an appeals officer in May or early June 1981. In this document they requested an extension of time to file and an extension of time to pay. In both cases the extension date requested was September 9, 1978. This document was intended to amend the June 1978 application which respondent had previously denied in part and approved in part. (Recall that in June 1978 respondent approved petitioners' application for extension of time to pay to September 9, 1978 but denied their application for extension of time to file.) However, it did not reference the prior application or the action taken in respect thereto, and did not set forth any reason for the requested extensions. In addition, Mr. Coleman did not sign and verify the amended application, unlike the December 1977 and June 1978 applications. On June 23, 1981 one of respondent's agents "approved" petitioners' amended application for extension of time to file and wrote as follows *116 on the Form 4768: "This is to amend your previous extension dated 6-13-78 which was previously denied in error." However, one week later, on June 30, 1981, the Chief of the Collection Branch of the Austin Service Center wrote Mr. Coleman the following letter: Our approval dated June 23, 1981 of your request for extension of time to file the estate tax return of Seth Edward Young, Jr. is not valid. Since our National Office previously ruled on the estate's request in Letter Ruling 8116019, this office lacks authority under the law to approve such a request. Facts Relating to the Reasonable Cause Issue
Shortly after the decedent's death, petitioners retained Robert Coleman to prepare all necessary tax returns, specifically including the Federal estate tax return, and to furnish other accounting services for the decedent's estate. Petitioners retained a professional tax consultant because neither had previously administered an estate or filed an estate tax return. They specifically retained Mr. Coleman because he had formerly been the decedent's accountant. Petitioners cooperated with Mr. Coleman throughout the administration of the decedent's estate.
Petitioners *117 had some business experience. For example, petitioner Hayden Haby had worked for six years as a vocational agriculture teacher and for 21 years as a county extension agent. He was also involved in the ranching business. Petitioners knew that an estate tax return was required to be filed. However, they did not know when it was due nor did they inquire. Petitioners gave Mr. Coleman blanket authority to prepare and file the return. They also gave him blanket authority to obtain extensions of time. Thus, for example, they were not aware of the application for extension which Mr. Coleman filed in June 1978 until some time after the fact. At the time of his death the decedent owned certain property in Australia. In early May 1977, immediately after they were appointed executors by the Uvalde County Court, petitioners began to correspond with banks and other third parties in Australia in order to obtain information necessary for the preparation of the decedent's estate tax return and the orderly administration of his estate. In June 1977 petitioner Seth Edward Young, Sr. traveled to Australia to ascertain the extent of the decedent's property interests there and to make arrangements *118 for their continued management. As we shall see, petitioner Hayden Haby also traveled to Australia on behalf of the estate at a later time. Among the decedent's property interests in Australia were three pastoral (or grazing homestead) leases known as Athol, Homebush, and Milton Park. All three had been obtained from the State of Queensland. Athol had been obtained in 1972 and Homebush about four months prior to the decedent's death; Milton Park was in the process of closing when the decedent died. The decedent owned 58 percent of Athol, which interest was titled in his name. (The remaining 42 percent was owned by the decedent's sisters.) Because of Australian land restrictions, all of Homebush and one-third of Milton Park were titled in the name of Kathy Young, the decedent's wife. (The remaining two-thirds of Milton Park was also owned by the decedent's sisters.) All three properties were operated as a partnership known as Young Ranches of Australia. The decedent executed a will in 1971 in which he provided for the disposition of all his property. He named his wife as one of the specific beneficiaries as well as the residuary beneficiary. No later than January 1978 *119 the decedent's wife elected to take under the will rather than under the marital property laws of the State of Texas. At about this same time the decedent's wife claimed that she owned all of Homebush and one-third of Milton Park. Petitioners opposed her claim and maintained instead that she was merely the decedent's nominee. After protracted negotiations, the matter was resolved by an agreement which was executed on June 1, 1978. The agreement stipulated that the monetary interest of the decedent's wife in the residuary estate was $70,000 and provided that such amount would be paid to her upon the sale of Homebush and Milton Park. The agreement also provided that she would execute a general power of attorney to petitioner Hayden Haby "who will, this date, leave for Australia for the express purpose of selling Homebush and Milton Park." Finally, the agreement provided that the proceeds of sale would be used to satisfy Australian estate taxes, the wife's interest in the residuary estate, and certain specific debts and obligations of the estate. On June 1, 1978 petitioner Hayden Haby left the United States for Australia in order to consummate the sale of Homebush and Milton Park. *120 (Negotiations for their sale had previously begun.) Haby arrived in Australia on June 3, successfully completed his business, and departed for Hawaii on June 23. He returned to Texas on July 2, 1978. Petitioners filed an estate duty return with the Australian Taxation Office on May 5, 1978. In that return they included the decedent's interest in Athol. That interest was valued consistently with an appraisal which petitioners had obtained from a firm of registered valuers in June 1977. Neither Homebush nor Milton Park was reported on the Australian estate duty return. On May 23, 1978 Mr. Coleman completed a draft of the decedent's Federal estate tax return. Compared with the gross estate reported on the filed return, the gross estate scheduled on this draft return was as follows: Draft Return
Filed Return
Real estate (Schedule A)
$ 501,187.50
$482,513.75
Stocks and bonds (Schedule B)
4,000.00
4,000.00
Mortgages, notes, and
cash (Schedule C)
205,939.96
205,939.96
Other miscellaneous
property (Schedule F)
300,424.76
277,986.13
Total gross estate
$1,011,552.22
$970,439.84
The draft return included the following items among "other miscellaneous *121 property": Item
Amount
Account receivable from Young Ranches
for advance to purchase Homebush
Ranch
$128,774.23
Account receivable from Young Ranches
for advance to purchase Milton Park
Ranch
35,250.00
58% interest in Young Ranches [Athol]
58,369.03
$222,393.26
The filed return reported the following item among "other miscellaneous property": Equity in Young Ranches of Australia,
a Partnership
Homebush
$117,052.02
Milton Park
35,250.00
Athol
32,157.38
$184,459.40
ULTIMATE FINDINGS OF FACT The decedent's estate tax return was not timely filed. Petitioners' failure to file the estate tax return on time was not due to reasonable cause. OPINION For estate tax purposes, the value of property includible in a decedent's gross estate is generally its fair market value at date of death.Section 2031; section 20.2031-1(b), Estate Tax Regs. See section 2032. The regulations define "fair market value" as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Section 20.2031-1(b), *122 Estate Tax Regs. See also section 1.170A-1(c)(2), Income Tax Regs.; section 25.2512-1, Gift Tax Regs. Although not expressly mentioned by the regulations, fair market value reflects the highest and best use to which land could be put, rather than its actual use at the valuation date. "Highest and best use for land is the use that, at the time of appraisal, is the most profitable likely use." American Institute of Real Estate Appraisers, The Appraisal of Real Estate, p. 43 (7th ed. 1978); emphasis in the original. See Estate of Hankins v. Commissioner,T.C. Memo. 1981-326. Because valuation on the basis of highest and best use, rather than actual use, can lead to substantially higher estate taxes and thereby discourage the continuation of farming or other closely-held business activities, Congress enacted section 2032A as part of the Tax Reform Act of 1976. Section 2003(a), (e), Pub. L. 94-455, 90 Stat. 1520, 1856-1861, 1862. In the case of decedents dying after December 31, 1976 section 2032A provides that under certain conditions the executor may elect to value real property included in the decedent's estate which is devoted to farming or closely *123 held business use on the basis of that property's value as a farm or in the closely held business, rather than its fair market value determined on the basis of its highest and best use. However, this special use valuation can not reduce the decedent's gross estate by more than $500,000. [3] [Joint Committee on Taxation, 94th Cong., 2d Sess. (1976), General Explanation of the Tax Reform Act of 1976, 1976-3 (Vol. 2) C.B. 1, 549.] See S. Rept. No. 94-938 (Part 2) (1976), 1976-3 (Vol. 3) C.B. 643, 656-658; H. Rept. No. 94-1380 (1976), 1976-3 (Vol. 3) C.B. 735, 755-762. See also Estate of Cowser v. Commissioner,80 T.C. 783, 785 (1983); Estate of Coon v. Commissioner, 81 T.C.     (filed Sept. 22, 1983); section 20.2032A-3(a), Estate Tax Regs. In order to value qualifying real property at its special use value rather than at its fair market value, *124 the executor must elect the application of section 2032A "not later than the time prescribed by section 6075(a) for filing the return of tax imposed by section 2001 (including extensions thereof) and * * * in such manner as the Secretary shall be regulations prescribe." Section 2032A(d)(1). See section 2032A(a)(1)(B). The regulations provide that the election is to be made on a timely-filed estate tax return (Form 706). Section 20.2032A-8(a)(1), (3), Estate Tax Regs. [4]
Issue 1: Timeliness of the Estate Tax Return
On Schedule A of the decedent's estate tax return petitioners reported real estate with an aggregate date-of-death value of $482,513.75. This amount reflects a decrease under section 2032A in the fair market value of the decedent's Texas ranch in the amount of $500,000. Respondent contends that the estate tax return was not timely *125 filed and that this decrease in value is therefore not allowable. Petitioners contend to the contrary. They also contend that respondent is not entitled to the presumption of correctness because of his failure to expressly determine in the statutory notice the ultimate fact on which the deficiency and late-filing addition are predicated, i.e., an untimely-filed estate tax return. Because of its threshold importance, we shall begin with this preliminary issue. Petitioners appear to recognize that "A statutory notice ordinarily carries with it a presumption of correctness that, except where provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, places the burden of proof and the burden of going forward with the evidence on [them]." Llorente v. Commissioner,74 T.C. 260, 263-264 (1980), affd. in part and revd. and remanded in part 649 F.2d 152 (2d Cir. 1981). See Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. They maintain, however, that the presumption "has no application here because the Respondent has made no determination of the essential and *126 estimate [sic] fact of whether the Return was timely filed." We reject petitioners' contention because its factual predicate is faulty. [5] In adjusting the decedent's taxable estate to reflect the fair market value of the ranch, the notice of deficiency states as follows: It is determined that the decedent's share of the fair market value of property reported on the estate tax return as real estate is $982,513.75 rather than $482,513.75, since the late filing of the estate tax return resulted in disallowance of the special use value credit allowable by Section 2032A of the Internal Revenue Code as claimed in Item 2, Schedule A. Accordingly, the taxable estate is increased $500,000.00 [Emphasis added.] In our opinion the statutory notice flatly contradicts petitioners' assertion that respondent never made any determination that the estate tax return was not timely filed. [6]
*127 We turn now to the principal issue before us, namely, whether the decedent's estate tax return was timely filed. For the reasons which we shall develop, we agree with respondent that the return was not timely filed. Section 20.6075-1, Estate Tax Regs., provides that the due date for an estate tax return is "the date on or before which the return is required to be filed in accordance with the provisions of section 6075(a) or the last day of the period covered by an extension of time" under section 6081(a) and section 20.6081-1, Estate Tax Regs. The decedent died on March 9, 1977. Under section 6075(a) [7] the estate tax return was due nine months later, or December 9, 1977. Shortly before that date, on December 5, 1977, petitioners filed an application for an extension, requesting an additional six months (to June 9, 1978) within which to file the estate tax return.Respondent granted this application. On or about June 6, 1978 petitioners filed a second application, requesting an additional three months (to September 9, 1978) within which to file. On June 13, 1978 respondent denied this application and notified petitioners' representative shortly thereafter.Nevertheless, petitioners *128 did not actually file the estate tax return until September 11, 1978. At this point one might conclude that the estate tax return was not timely filed. However, petitioners contend to the contrary, maintaining that the return was filed within the period requested in their second application for extension. [8] In this regard they argue that respondent abused his discretion by refusing to approve their second application and that the due date for the estate tax return was therefore September 9, 1978, rather than June 9, 1978. We disagree. At the outset we note that petitioners' contention is predicated on two assumptions. *129 First, they assume that the Commissioner's authority to grant extensions of time for filing returns is reviewable for an abuse of discretion. Second, they also assume that if we substitute our judgment for respondent's, we would necessarily conclude that a three-month extension from June 9, 1978, rather than (for example) a two-month extension, would have been appropriate. Respondent does not challenge either assumption but maintains instead that there was, in fact, no abuse of discretion in this case. We turn now to section 6081, the section which governs extensions of time for filing returns. Subsection (a) of that section provides as follows: The Secretary may grant a reasonable extension of time for filing any return, declaration, statement, or other document required by this title or by regulations. Except in the case of taxpayers who are abroad, no such extension shall be for more than 6 months. [Emphasis added.] Respondent maintains that this section does not authorize extensions which in the aggregate exceed six months, unless the executor is abroad at the time the return is due under section 6075(a). He denied petitioners' second application on *130 this basis, having already approved a 6-month application and neither petitioner being abroad on December 9, 1977. Petitioners, on the other hand, maintain that respondent's contention violates the plain meaning of section 6081(a) and constitutes an unreasonable, arbitrary, and capricious interpretation of that section. In particular, petitioners maintain that section 6081(a) does not limit the number of extensions which may be granted but merely limits (except in the case of taxpayers who are abroad) the maximum amount of time (i.e., six months) which may be approved for each requested extension. Furthermore, petitioners maintain that the exception to the limitation for taxpayers who are abroad is operative when the executor is abroad on the last day of the period covered by a prior extension.
We find it unnecessary to definitively construe section 6081(a). Suffice it to say that we think respondent's interpretation neither violates the plain meaning of the section nor is unreasonable, arbitrary, or capricious. [9] Unlike petitioners, we do not think section 6081(a) plainly authorizes the Commissioner to grant an indefinite number of extensions each of which *131 (except in the case of a taxpayer who is abroad) may be as long as 6 months. In other words, respondent's view that the limitation of section 6081(a) speaks to extensions in the aggregate, rather than to each individual extension, is not contradicted by the literal language of that section. Furthermore, the section does not state at what point (or points) in time the taxpayer must be abroad before the exception to the limitation becomes operative.Respondent's view that the taxpayer (or, in this case, the executor) must be abroad on the statutory due date does not strike us as illogical, much less as unreasonable, arbitrary, or capricious, particularly in view of petitioners' inability to cite any authority in support of their position.In short, we are unwilling to conclude that respondent's refusal to grant a second extension because of his interpretation of section 6081(a) constitutes an abuse of discretion. Petitioners advance a number of other arguments in support of their position that the estate tax return was timely filed. Although we *132 find none of these arguments persuasive, we shall briefly discuss the principal ones. (1) Petitioners contend that respondent did not validly disapprove their second application for extension because an IRS official did not actually sign the document (Part IV of Form 4768) which denied their request. [10] However, petitioners cite no authority whatsoever in support of their position. Neither the statute nor the regulation specifies the manner in which the Commissioner shall approve or disapprove an application for extension. In our opinion his failure to execute the applicable form does not affect the validity of his action. Cf. Perlmutter v. Commissioner,44 T.C. 382, 399-400 (1965), affd. 373 F.2d 45 (10th Cir. 1967) (the fact that a notice of deficiency is not signed does not affect its validity). (2) Petitioners also contend that section 6081(a) should be construed in pari materia with section 6161(a)(1) [11] relating to extensions of time for *133 paying tax: Since the time for payment of the tax as shown on the teturn almost invariably coincides with the time specified for the filing of the return, it would appear that the efficient administration of the procedural rules relating to the filing of returns and the assessment and collection of taxes should be read and construed together so that there will not be one set of rules relating to extensions of time to pay the tax and another set of rules relating to extensions of time to file the return. We suspect, however, that the real motivation behind this contention is the fact that respondent approved petitioners' second application for extension of time to pay to September 9, 1978 but disapproved their second application for extension of time to file to that same date. In any event, petitioners' contention must fail. *134 We begin by noting that the organization of the Internal Revenue Code does not lend itself to construing section 6081 and 6161 in pari materia. The former is part of Subchapter A ("Returns and Records") of Chapter 61 ("Information and Returns") whereas the latter is included in Subchapter B ("Extensions of Time for Payment") of Chapter 62 ("Time and Place for Paying Tax"). The greater technical complexity that generally surrounds extensions of time to pay is evidenced by the fact that section 6161 is but one of several sections in Chapter 62 which relate to that matter, whereas section 6081 is the only section in Chapter 61 which relates to extensions of time to file. Furthermore, there are substantive differences between section 6081(a) and section 6161(a)(1).For example, the period for an extension under section 6161(a)(1) is 12 months in the case of estate tax but only 6 months (except in the case of taxpayers who are abroad) under section 6081(a). This difference undoubtedly accounts for the fact that respondent was willing to grant petitioners' second application for extension of time to pay to September 9, 1978. More fundamentally, the exception under section 6081(a) for *135 taxpayers who are abroad does not apply under section 6161(a)(1) in the case of estate tax. See section 20.6161-1(a), Estate Tax Regs. Cf. section 6161(a)(2); section 1.6161-1(a)(1), Income Tax Regs.; section 25.6161-1(a)(1), Gift Tax Regs. Finally, the regulations themselves emphasize the independent relationship between extensions of time to file and extensions of time to pay. In this regard section 20.6161-1(c)(3), Estate Tax Regs., provides that "The granting of an extension of time for paying the tax will not relieve the executor from the duty of filing the return on or before the date provided for in § 20.6075-1." Similarly, section 20.6081-1(c), Estate Tax Regs., provides that "An extension of time for filing the return does not operate to extend the time for payment of the tax." (3) Petitioners also contend that respondent retroactively approved their second application for extension of time of file. In this regard they rely on their "amended application" which was filed in May or early June 1981, nearly three years after the estate tax return had been filed, and which was purportedly granted on June 23, 1981. Assuming that respondent may approve an extension which *136 is filed after the due date of the return, [12] we nevertheless think this argument is disingenuous under the facts of this case. The amended application was submitted to respondent's Appeals Office in Houston during the administrative appeal stage of this case. It is highly questionable whether the individual who "approved" it had the authority to do so. [13] Moreover, in January 1978 petitioners received a copy of a technical advice memorandum from respondent's National Office which concluded that they were not entitled as a matter of law to a further extension from June 9, 1978. See LTR 8116019, January 13, 1981 (CCH). One must therefore question their motivation for reapplying for a second extension. Finally, and most importantly, respondent advised petitioners by letter dated June 30, 1981 that "Our approval dated June 23, 1981 of your request for extension of time to file the estate tax return of Seth Edward Young, Jr., is not valid." Under these circumstances we think the June 23 "approval" is without consequence. It goes without saying that the reversal of that "approval" did not constitute an abuse of discretion. Cf. Crissey v. United States, an unreported case *137 ( N.D.N.Y., 1980, 45 AFTR2d 80-1754, 80-1 USTC par. 13,335).
(4) Lastly, petitioners contend that section 2032A should be liberally construed because it is a relief provision. See and compare section 3.09 (construction of relief or remedial provisions) and section 3.08 (construction of deduction and exemption provisions), 1 Mertens, *138 Law of Federal Income Taxation (1981 rev. vol.). The fallacy of this argument is that we are not construing section 2032A. Rather, we are merely deciding whether the estate tax return was timely filed. That issue transcends section 2032A because it arises in many other contexts. We therefore cannot afford to be "result conscious" in arriving at our decision. In view of the foregoing we hold that petitioners did not timely file the estate tax return and, for that reason, are not entitled to report the real property in question at its special use value. Respondent is sustained on this issue. Issue 2: Reasonable Cause
We turn now to the question whether petitioners' failure to file the estate tax return on time was due to reasonable cause and not due to willful neglect. If so, the addition to tax under section 6651(a)(1) is avoided. See section 301.6651-1(c)(1), Proced. & Admin. Regs. However, reasonable cause will not cure petitioners' failure to timely elect special use valuation under section 2032A. Estate of Boyd v. Commissioner,T.C. Memo. 1983-316. [14]
*139 Petitioners raise a preliminary issue concerning the burden of proof. However, this is not much of an issue because the matter is so well settled. As we have repeatedly held, the burden of proof is on the taxpayer to establish not only the absence of willful neglect but also the existence of reasonable cause. Estate of DiRezza v. Commissioner,78 T.C. 19, 32-33 (1982). The cases cited by petitioners are inapposite because they deal with additions pleaded by respondent but not determined in the notice of deficiency. Such additions constitute new matter and the burden of proof is on respondent. Rule 142(a), Tax Court Rules of Practice and Procedure. Here, however, respondent determined the addition for late filing in the statutory notice. (See footnote 6, supra.) Consequently, the burden of proof properly rests with petitioners. [15]
On brief *140 petitioners advance two arguments in support of their position that their failure to timely file the estate tax return was due to reasonable cause. We shall discuss each of these arguments in turn. First, petitioners invoke the doctrine of estoppel. In this regard they maintain that respondent's "approval" on June 23, 1981 of their "amended application" for extension of time to file constituted a concession of the reasonable cause issue and that having once conceded this issue respondent should be estopped from raising it again. In our opinion petitioners' contention borders on the frivolous. Accordingly, we shall not undertake a lengthy discussion of the doctrine of estoppel as applied by this and other Federal courts. Instead, see Schuster v. Commissioner,312 F.2d 311, 317-318 (9th Cir. 1962), affg. 32 T.C. 998 (1959) and revg. 32 T.C. 1017 (1959); Manocchio v. Commissioner,78 T.C. 989, 1000-1001 (1982), affd. 710 F.2d 1400 (9th Cir. 1983); Estate of Emerson v. Commissioner,67 T.C. 612, 617-618 (1977); Underwood v. Commissioner,63 T.C. 468, 477-478 (1975), affd. *141 535 F.2d 309 (5th Cir. 1976). Suffice it to say that an essential element of estoppel is reliance. Given the fact that petitioners filed their amended application nearly three years after they filed the estate tax return, it is readily obvious that petitioners could not have relied on respondent's short-lived "acceptance" of that application in any way material to this issue. [16] See Saigh v. Commissioner,36 T.C. 395, 423 (1961). Second, petitioners seek to shift responsibility for their failure to timely file the estate tax return to Mr. Coleman, their accountant. Petitioners maintain that they are ranchers and had never before administered an estate or filed a Form 706; accordingly, they "invested Mr. Coleman with blanket authority to handle extensions and do whatever was necessary to attend to the filing of the Estate Tax Return." Because of such reliance, petitioners conclude that reasonable cause *142 exists in this case. We disagree. Whether reasonable cause exists is, of course, primarily a question of fact to be determined from all of the facts and circumstances in a particular case. Estate of DiRezza v. Commissioner,78 T.C. at 33; Estate of Duttenhofer v. Commissioner,49 T.C. 200, 204 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969). We must begin, however, with several fundamental principles which serve to guide our inquiry. It is clear that reasonable cause is a function of ordinary business care and prudence. Section 301.6651-1(c)(1), Proced. & Admin. Regs. It is also clear that a personal representative has a positive duty to ascertain the nature of his or her responsibilities as the fiduciary of the estate and that "This duty is not satisfactorily discharged by delegating the entire responsiblity for filing the estate tax return to the attorney for the estate." Estate of Lammerts v. Commissioner,54 T.C. 420, 446 (1970), affd. per curiam on this issue 456 F.2d 681, 683 (2d Cir. 1972); Estate of Geraci v. Commissioner,T.C. Memo. 1973-94, affd. per curiam 502 F.2d 1148 (6th Cir. 1974). *143 In other words, if the personal representative knows that a return should be filed and delegates the responsibility of preparing and filing the return to a third person, mere reliance on the delegate to timely file the return is not enough to establish the exercise of ordinary business care. Estate of Rapelje v. Commissioner,73 T.C. 82, 89 (1979), disapproved on another issue in Estate of Young v. Commissioner, 81 T.C.     (filed November 17, 1983); Paula Construction Co. v. Commissioner,58 T.C. 1055, 1061 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973); Estate of Duttenhofer v. Commissioner,49 T.C. at 205. Rather a personal representative must, at a minimum, ascertain the due date of the return and take appropriate steps to insure that the delegate acts diligently to fulfill the filing obligation. Estate of DiRezza v. Commissioner,78 T.C. at 33-34; Estate of Rapelje v. Commissioner,supra at 89-90. Inexperience in handling the administration of an estate does not excuse the personal representative from failing to discharge these duties. Ferrando v. United States,245 F.2d 582 (9th Cir. 1957); *144 Estate of DiRezza v. Commissioner,supra;Estate of Duttenhofer v. Commissioner,supra;Estate of Geraci v. Commissioner,supra.
In the present case petitioners knew that a Federal estate tax return was required to be filed. However, there is nothing in the record to suggest that they ever bothered to ascertain its due date. To the contrary, the record demonstrates that they invested Mr. Coleman, their accountant, with blanket authority to prepare and file the return. This general delegation of responsibility is readily evident from the testimony of petitioner Hayden Haby on redirect examination: Q: But the point I am getting to is, you turned this preparation and filing of the estate tax return over to Mr. Coleman and expected him to handle it. A: Yes. Q: You gave him the information and you did everything that you could possibly do to furnish him with the information to prepare the return. A: Yes. Q: And as I understand it, he had blanket authority to handle the extensions and do whatever was necessary to get the return filed.Is that correct? A: Yes. Thus, we have no reason to think that *145 at the time he left for Australia, Haby appreciated the imminence of the filing deadline. We do know that he did not consult with Mr. Coleman at that time about the need to either file the estate tax return or apply for an extension of time. In our view petitioners' general delegation of responsibility to their accountant to prepare and file the estate tax return can be viewed as an abdication of their duties as the co-executors of the estate. See Estate of DiRezza v. Commissioner,78 T.C. at 34. Under these circumstances we cannot conclude that petitioners exercised ordinary business care and prudence. We recognize that petitioners cooperated with Mr. Coleman by marshaling information needed for the preparation of the estate tax return and furnishing it to him. However, we do not think that such cooperation is sufficient to discharge their duties relative to the estate tax return. See Estate of DiRezza v. Commissioner,supra at 34. This is not a case involving a complicated area of tax law where a layman could not reasonably be expected to know whether a tax return is required. See West Coast Ice Co. v. Commissioner,49 T.C. 345, 351-352 (1968). *146 Nor is it a case where the taxpayer relies on a professional tax consultant who advises him that a tax return is not required. See Estate of Christ v. Commissioner,54 T.C. 493, 553-554 (1970), affd. on another issue 480 F.2d 171 (9th Cir. 1973). Rather, this is a case in which the estate's personal representatives simply failed in their duty to ascertain the due date of the estate tax return and to take appropriate steps to insure that the accountant prepares and files it on time. Petitioners cite and rely on only one case, Rohrabaugh v. United States,611 F.2d 211 (7th Cir. 1979), which they claim is virtually indistinguishable from this one. We disagree. In Rohrabaugh the Seventh Circuit held that reasonable cause existed where an inexperienced taxpayer wholly unaware of the time requirements for filing a Federal estate tax return selected a competent tax expert, supplied him with all the necessary and relevant information, requested him to prepare all necessary documents including tax returns, relied upon his doing so, but nevertheless maintained contact with him from time to time during the administration of the estate. *147 [611 F.2d at 214.] One of the determinative factors in Rohrabaugh was the administratrix' lack of business experience "that would reveal to her that there is a deadline for the filing of estate tax returns." 611 F.2d at 216. In the present case neither petitioner had previously administered an estate or filed an estate tax return. However, we cannot say that they were so inexperienced that they did not know that an estate tax return, like any other tax return, must be filed within a prescribed period of time. [17] Petitioner Hayden Haby worked for six years as a vocational agriculture teacher and for 21 years as a county extension agent; he was also involved in the ranching business. Also, if petitioners were truly inexperienced in business matters, we doubt that they would have traveled twice to Australia to attend to the administration of the decedent's estate or would have participated in the negotiations with the decedent's wife concerning her claims to certain of the Australian properties. *148 Apart from the foregoing, we question whether Rohrabaugh adequately recognizes a personal representative's duty to ascertain the due date of the estate tax return and to take appropriate steps to insure that the tax consultant prepare and file it on time. We also find it difficult to reconcile Rohrabaugh and Boyle v. United States,710 F.2d 1251 (7th Cir. 1983), a recent case in which the Seventh Circuit followed Rohrabaugh, with another Seventh Circuit case, Fleming v. United States,648 F.2d 1122 (7th Cir. 1981). In Fleming, the Seventh Circuit reaffirmed (at 1126) the principles that it had previously set forth in United States v. Kroll,547 F.2d 393, 396 (7th Cir. 1977), including Kroll's holding that "when there is no question that a return must be filed, the taxpayer has a personal, nondelegable duty to file the tax return when due." See Boeving v. United States,650 F.2d 493, 495 (8th Cir. 1981) ("The executor or executrix has a personal and nondelegable duty to file a timely return, and reliance on the mistaken advice of counsel is not sufficient to constitute 'reasonable cause' for failing *149 to fulfill that duty"); Estate of Lillehei v. Commissioner,638 F.2d 65, 66 (8th Cir. 1981), affg. per curiam a Memorandum Opinion of this Court ("an executor has a personal and nondelegable duty to ascertain the due date of the return and to insure that the attorney prepares and files the return on time"). See also Crouse v. United States,711 F.2d 102 (8th Cir. 1983); Smith v. United States,702 F.2d 741 (8th Cir. 1983); Ferrando v. United States,245 F.2d 582; Sarto v. United States, an unreported case ( N.D. Cal. 1983, 51 AFTR2d 83-1353, 83-1 USTC par. 13,520). In any event, the circuit to which this case is appealable (see section 7482) has held that "it is well established that reliance on tax advisors is not reasonable cause for failure to file a return on time; the responsibility for assuring a timely filing is the taxpayer's." Millette & Assoc., Inc. v. Commissioner,594 F.2d 121, 124-125 (5th Cir. 1979), affg. a Memorandum Opinion of this Court. On brief petitioners confine their argument to reliance on their accountant, a defense which we have rejected under the fact *150 of this case. We are not yet finished with the reasonable cause issue, however, because petitioners imply (without expressly contending) that their delinquency is execused by the circumstances surrounding petitioner Hayden Haby's trip to Australia in June 1978. We disagree for the following reasons. First, any such contention ignores petitioners' duty to ascertain the due date of the estate tax return and to take appropriate steps to insure that their accountant prepares and files it on time. We have already decided that petitioners did not satisfy these duties. Second, the June 1978 trip to Australia was undertaken for the purpose of consummating the sale of Homebush and Milton Park. Such sale did not affect the preparation of the decedent's estate tax return. Third, if petitioners were uncertain about the includibility of Homebush and Milton Park in the decedent's gross estate, as they claim they were prior to June 1, 1978, [18] they could have filed the return, reported just Athol, and expressly noted the controversy involving the other two pastoral leases. When that issue was resolved, they could have filed supplemental information.See section 20.6081-1(c), Estate Tax Regs. *151 , quoted infra. Fourth, the includibility of Homebush and Milton Park in the decedent's gross estate was conclusively resolved by virtue of the agreement which was executed on June 1, 1978. [19] Petitioners have not shown why the estate tax return could not have been filed before leaving for Australia to consummate the sale of those properties. [20] Fifth, petitioner Hayden Haby left Australia on June 23, 1978, spent a week in Hawaii, and returned to Texas on July 2, 1978. Although petitioners do not tell us what Haby did in Hawaii, we suspect it had nothing to do with the administration of the estate, much less the preparation of the estate tax return. More importantly, they do not tell us why it took another two months after his homecoming to file the return. Sixth, petitioners managed to file an estate duty return with the Australian Taxation Office on May 5, 1978, more than a month before the due date (as extended) of the decedent's Federal estate tax return. *152 Finally, we think it significant that petitioners' accountant had prepared Form 706 in draft form by May 23, 1978. Although petitioners emphasize the differences between this draft and the return that was actually filed, the two are strikingly similar. In any event, as laudable a goal as perfection may be, the regulations clearly provide that the return must be filed within the allotted time, even if imperfect: A return as complete as possible must be filed before the expiration of the extension period granted.* * * [T]he return cannot be amended after the expiration of the extension period although supplemental information may subsequently be filed that may result in a finally determined tax different from the amount shown as the tax by the executor on the return. [Section 20.6081-1(c), Estate Tax Regs.] In view of the foregoing we hold that petitioners' failure to file the estate tax return on time was not due to reasonable cause. Because of concessions by respondent, Decision will be entered under Rule 155.[21]
*153 Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended ans in effect at the time of the decedent's death (March 9, 1977). In the notice of deficiency respondent also determined an addition to tax for late payment under section 6651(a)(2). However, in Estate of Young v. Commissioner,↩ 81 T.C. No.     (November 17, 1983), we held that this Court does not have jurisdiction to redetermine that addition because it was not attributable to a deficiency.
2. Respondent also agrees that petitioners would be entitled to the alternate extension of time for payment of estate tax under section 6166. However, this matter does not affect the determination of either the deficiency or the late-filing addition before us.↩
3. The Economic Recovery Tax Act of 1981 ("ERTA") increased the $500,000 limitation in the case of decedents dying after December 31, 1980. Section 2032A(a)(2)↩, as amended by section 421(a), (k)(2), Pub. L. 97-34, 95 Stat. 172, 306, 313. The new limitation ($750,000) is phased in over a three-year period.
4. ERTA eliminated the requirement that the election be made on a timely-filed estate tax return by amending section 2032A(d)(1)↩. Section 421(j)(3), Pub. L. 97-34, 95 Stat. 172, 313. However, this amendment only applies to the estates of decedents dying after December 31, 1981. Section 421(k)(1), Pub. L. 97-34, 95 Stat. at 313.
5. We should not be understood to imply that we would otherwise agree with petitioners' contention. The degree of specificity required in a notice of deficiency is discussed in detail in Foster v. Commissioner,80 T.C. 34, 229-230↩ (1983).
6. In the statutory notice respondent also determined an addition to tax for late filing under section 6651(a)(1). If there could be any conceivable question concerning the basis for this determination, the notice clearly provides the answer, stating that "your Estate tax return for the period ending March 9, 1977 was not filed within the time prescribed by law and you have not shown that the failure to file on time was due to reasonable cause." Given this explanation, as well as the one set forth above in the text, we fail to comprehend how petitioners can assert that respondent never made any determination that the estate tax return was not timely filed.↩
7. SEC. 6075. TIME FOR FILING ESTATE AND GIFT TAX RETURNS. (a) ESTATE TAX RETURNS.--Returns made under section 6018(a) (relating to estate taxes) shall be filed within 9 months after the date of the decedent's death.↩
8. As will be recalled, the extension date requested by petitioners in their second application was September 9, 1978. That date was a Saturday. Thus, if the second requested extension date is applicable, the due date would be September 11, 1978, the date on which the return was actually filed. See section 7503. Cf. section 7502.↩
9. At the risk of repeating ourselves we hasten to emphasize that we do not necessarily agree with respondent's interpretation.↩
10. We find it curious that petitioners make this argument given the fact that neither they nor their accountant signed or verified their June 1981 "amended application" (discussed infra↩).
11. SEC. 6161. EXTENSION OF TIME FOR PAYING TAX. (a) AMOUNT DETERMINED BY TAXPAYER ON RETURN.-- (1) GENERAL RULE.--The Secretary, except as otherwise provided in this title, may extend the time for payment of the amount of the tax shown, or required to be shown, on any return or declaration required under authority of this title (or any installment thereof), for a reasonable period not to exceed 6 months (12 months in the case of estate tax) from the date fixed for payment thereof. Such extension may exceed 6 months in the case of a taxpayer who is abroad. [Emphasis added.] The date fixed for payment of estate tax is the date fixed for filing the estate tax return, determined without↩ regard to any extension of time for filing the return. Section 6151(a); section 20.6151-1(a), Estate Tax Regs.
12. Section 20.6081-1, Estate Tax Regs., does not directly address this matter. However, subsection (b) of the regulation provides that an application for extension "should be made before the expiration of the time within which the return otherwise must be filed * * *." ↩
13. Section 20.6081-1(a), Estate Tax Regs., authorizes the district director or the director of a service center to grant extensions of time for filing returns. Such authority has been redelegated. See Commissioner's Delegation Order No. 116 (Rev. 4), 1980-2 C.B. 758, supsdg. (Rev. 3), 1979-1 C.B. 476, supsdg. (Rev. 2), 1978-2 C.B. 482, supsdg. (Rev. 1), 1975-2 C.B. 541↩. However, at no pertinent time was it delegated to an appeals officer, the individual who apparently "granted" petitioners' "amended application."
14. Petitioners' reliance on section 1.9100-1, Income Tax Regs., is misplaced. Upon a showing of good cause by a taxpayer, that section gives the Commissioner discretion to grant a reasonable extension of time for making an election or an application for relief.However, by its very terms section 1.9100-1, Income Tax Regs.↩, applies only to elections or applications in respect of tax under Subtitle A (i.e., income tax). Moreover, that section specifically provides that "For purposes of this section, an application for an extension of time for filing a return under section 6081 is not an application for relief in respect of tax."
15. The justification for the late-filing addition set forth in the statutory notice is limited to petitioners' failure to establish reasonable cause. Respondent must therefore be satisfied that the delinquency was not due to willful neglect. Accordingly, we shall only focus on the question of reasonable cause.↩
16. Although not directly relevant to the estoppel issue, we still think it noteworthy that petitioners attached to the decedent's estate tax return a "reasonable cause" affidavit in an effort to avoid the addition to tax for late filing.↩
17. In an earlier case the Seventh Circuit stated that "Any layman with the barest modicum of business experience knows that there is a deadline for the filing of returns and knows that he must sign the return before it is filed." United States v. Kroll,547 F.2d 393, 396↩ (7th Cir. 1977).
18. We note, however, that petitioners always maintained that those properties belonged to the decedent. ↩
19. On brief petitioners state that "Once the Settlement Agreement was concluded on June 1, 1978, the Executors were for the first time in a position to file an accurate and complete Estate Tax Return." ↩
20. We doubt that valuation could have been the problem given the fact that Athol was appraised by a firm of registered valuers in June 1977 and Homebush and Milton Park were purchased shortly before the decedent's death.↩
21. We think the Rule 155 phase of this case will proceed more smoothly if the parties calculate the amount of the addition to tax for late filing by taking into consideration the jurisdiction conferred on this Court by section 6659(b)(1) to redetermine that addition.See and compare Estate of DiRezza v. Commissioner,78 T.C. at 25-32, with Estate of Scarangella v. Commissioner,60 T.C. 184↩ (1973).