T.C. Memo. 1996-51

UNITED STATES TAX COURT

EDDIE M. AND CYNTHIA L. CHANDLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1564-94.            Filed February 13, 1996.

<u>Samuel Robert McCord</u>, for petitioners.

<u>Linda J. Wise</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was assigned pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable years in
issue, and all Rule references are to the Tax Court Rules of

Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1989 and 1990, as well as an addition to tax and a penalty, as follows:

| Year | Deficiency | Addition to Tax and Penalty Sec. 6651(a)(1) | Sec. 6662(a) |
|------|-----------|------------------------|--------------|
| 1989 | $3,132 | --- | $626 |
| 1990 | 4,521 | $541 | $904 |

After a concession by petitioners,[2] the issues for decision are as follows:

(1) Whether petitioners or respondent bears the burden of proof with respect to respondent's deficiency determinations;

(2) whether petitioners understated their income on their 1989 and 1990 income tax returns by $11,149 and $15,236, respectively;

(3) whether petitioners are liable for an addition to tax for failure to timely file under section 6651(a)(1) for 1990; and

(4) whether petitioners are liable for an accuracy-related penalty for negligence under section 6662(a) for 1989 and 1990.

Finally, whether petitioners are liable for self-employment taxes for 1989 and 1990 (and if so, the correlative amount of the

Practice and Procedure.

[2] Neither at trial nor on brief did petitioners contest respondent's determination that they received unreported interest income in the amount of $67 from Family Savings Federal Credit Union in 1989. Accordingly, petitioners are deemed to have conceded this adjustment to their income. Murphy v. Commissioner, 103 T.C. 111, 120 (1994); Smith v. Commissioner, T.C. Memo. 1994-188, affd. without published opinion 61 F.3d 31 (11th Cir. 1995).

deduction under section 164(f) to which they are entitled for 1990) and whether petitioners are entitled to an earned income credit for 1990 are derivative issues, the resolution of which depends on our disposition of the second issue enumerated above.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found.  Petitioners resided in Piedmont, Alabama, at the time that their petition was filed with the Court.

For 1989 and 1990, the taxable years in issue, petitioners were married and filed joint income tax returns.  They have three children, two sons and a daughter, who were born in 1985, 1986, and 1987.

In 1989 and for a short period in 1990, petitioner Eddie M. Chandler (petitioner) was employed as a rubber worker by Goodyear Tire and Rubber Company (Goodyear).  Petitioner terminated employment with Goodyear in 1990.

Petitioner was also self-employed in 1990.  He reported income from three separate activities: bulldozer work and digging; sales of wood products; and sales of melons.

Petitioner also derived income in 1990 from the sale of marijuana.  Petitioner had "played" with marijuana for many years before 1990.  Petitioners did not report any income from the sale of marijuana on either of their income tax returns for the years in issue.

Petitioner Cynthia L. Chandler (Mrs. Chandler) is a college graduate and a registered nurse by profession. In 1989 and for part of 1990, she worked part time as a bookkeeper for Mike's Video in Anniston, Alabama, and received nonemployee compensation in return for her services. Mrs. Chandler terminated her business relationship with Mike's Video in 1990.

Petitioners reported income on their 1989 and 1990 income tax returns as follows:

|  | 1989 | 1990 |
|---|---|---|
| Wages (petitioner) | $20,907 | $245 |
| Interest | 749 | 395 |
| Schedule C (petitioner) | | |
|   (1) bulldozer work/digging | | |
|       net profit | | 6,267 |
|   (2) sale of wood products | | |
|       net profit | | 2,910 |
|   (3) sale of melons | | |
|       net profit | | 1,500 |
| Unemployment compensation | 145 | --- |
| Bookkeeping income (Mrs. Chandler) | 1,800 | 900 |
| | 23,601 | 12,217 |

During 1989, petitioners maintained at least three accounts with Family Savings Federal Credit Union. During 1990, they maintained at least four such accounts. These accounts included share draft accounts. Only Mrs. Chandler wrote checks on the share draft accounts. Mrs. Chandler did not retain petitioners' bank statements and the carbon copies of their checks; rather, she discarded them after the checks had cleared their accounts.

In addition to writing checks, petitioners frequently used cash in making purchases. In particular, petitioner conducted much of his business in cash.

Expenses paid by petitioners during 1989 by cash and check did not exceed $37,215. Expenses paid by petitioners during 1990 by cash and check did not exceed $19,416.

In December 1990, a grand jury sitting in the United States District Court for the Northern District of Alabama (the grand jury) returned a one-count indictment against petitioner, petitioner's brother Ronnie Chandler, and a number of other individuals (the other individuals). The indictment charged conspiracy to possess with intent to distribute a controlled substance, namely, marijuana.

On January 9, 1991, the grand jury returned a 10-count indictment (the indictment) that superseded the previously mentioned 1-count indictment. Petitioner was charged in the first and tenth counts of the indictment with various narcotics-related offenses. Thus, in the first count of the indictment the grand jury charged petitioner, Ronnie Chandler, and the other individuals with conspiring to possess marijuana, a controlled substance, with intent to distribute. The first paragraph of the first count of the indictment read as follows:

The Grand Jury charges:
1. That from on or about January 1, 1987, to on or about October 1, 1990, within the Northern District of Alabama, and elsewhere, the defendants * * * did conspire with each other and others both known and unknown to the Grand Jury, to unlawfully,

knowingly and intentionally possess with intent to distribute and to distribute 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana and one thousand or more marijuana plants, a Schedule I controlled substance in violation of Title 21, United States Code, Section 841(a)(1)(A) and 846.

In the tenth count of the indictment the grand jury charged petitioner with possessing marijuana with intent to distribute. The tenth count read as follows:

The Grand Jury charges:
1. That from in or about June 1990 to in or about September 1990, within the Northern District of Alabama, the defendant, EDDIE CHANDLER [petitioner], did unlawfully, knowingly and intentionally possess with the intent to distribute and distributed marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Initially, petitioner pleaded not guilty to the charges set forth in the indictment. However, on February 14, 1991, 2 days after his jury trial began, petitioner changed his plea and pleaded guilty to the tenth count of the indictment pursuant to an agreement reached with the U.S. Attorney.

On April 25, 1991, the District Court dismissed the first count of the indictment against petitioner on the oral motion of the U.S. Attorney and imposed its sentence on petitioner relative to his guilty plea to the tenth count of the indictment. Petitioner received 8 months in prison and 5 years of supervised release subject to the special condition that he participate in a substance abuse program, including drug testing, as directed by the U.S. Parole Office. The Court declined to impose a fine on petitioner because of his inability to pay.

Petitioners executed their income tax return for 1990 on June 6, 1991. The return was received by respondent's Service Center in Memphis, Tennessee, on June 10, 1991.

In the notice of deficiency, respondent determined that petitioners failed to report accurately their income on their income tax returns for 1989 and 1990. Accordingly, respondent used an indirect method in order to reconstruct petitioners' income for those years. Specifically, respondent used the source and application of funds method and determined that petitioners understated their income (or overstated their expenses) on their 1989 and 1990 income tax returns by $11,149 and $15,236, respectively. Respondent determined these amounts as follows:

## Taxable Year 1989

### Funds Available

| | |
|---|---|
| Wages - per return | $20,907 |
| Interest income - per return | 749 |
| Unemployment compensation - per return | 145 |
| Miscellaneous income - per return | 1,800 |
| Interest income - credit union | 67 |
| Loan | 15,000 |
| State tax refund | 95 |
| Federal tax refund | 791 |
| Credit union acct #11957 (balance on 1/1/89) | 194 |
| Credit union share acct #11246 (balance on 1/1/89) | 2,884 |
| Credit union acct #11246 (balance on 1/1/89) | 8,462 |
| Sale of truck - oral testimony | 250 |
| Sale of 4-wheeler | 3,000 |
| Sale of land to brother | 5,000 |
| Total funds available | 59,344 |

### Expenditures

| | |
|---|---|
| Federal tax - per W-2 | $1,226 |

| | |
|---|---:|
| Social security tax - per W-2 | 1,561 |
| State tax - per W-2 | 573 |
| Local tax - per W-2 | 365 |
| IRA | 2,250 |
| Payment to GMC - truck purchase | 16,900 |
| CD purchase | 10,000 |
| Credit union acct #11957 (balance on 12/31/89) | 4,072 |
| Credit union share acct #11246 (bal. on 12/31/89) | 2,715 |
| Credit union acct #11246 (balance on 12/31/89) | 7,891 |
| Expenses paid by check | 23,975 |
| Expenses paid by cash | 19,240 |
| less: IRA | (2,250) |
| less: deposits | (6,125) |
| less: truck | (1,900) |
| less: CD | (10,000) |
| Total expenditures | 70,493 |

Understatement of Income

| | |
|---|---:|
| Total expenditures | $70,493 |
| less: total funds available | -59,344 |
| Understatement of income | 11,149 |

Taxable Year 1990

Funds Available

| | |
|---|---:|
| Wages - per return | $245 |
| Interest income - per return | 395 |
| Other income - per return | 900 |
| Federal tax refund | 298 |
| Gross receipts per Schedule C's | 12,700 |
| CD | 10,418 |
| CD | 10,804 |
| Credit union acct #11957 (balance on 1/1/90) | 4,072 |
| Credit union share acct #11957 (bal. on 1/1/90) | [1]1,987 |
| Credit union share acct #11246 (balance on 1/1/90) | 2,715 |
| Credit union acct #11246 (balance on 1/1/90) | 7,891 |
| Cash from sale of land to brother | 5,000 |
| Total funds available | 57,425 |

Expenditures

| | |
|---|---:|
| IRA | $3,800 |
| Estimated tax payments - per return | 530 |
| Schedule C expenses - per return | 600 |
| Business asset purchased - per return | 450 |

| | |
|---|---:|
| CD purchased | 10,418 |
| CD purchased | 10,804 |
| Expenses paid by cash | 3,450 |
| Credit union acct #11957 (balance on 12/31/90) | 6,771 |
| Credit union share acct #11957 (bal. on 12/31/90) | [1]162 |
| Credit union share acct #11246 (bal. on 12/31/90) | 310 |
| Credit union acct #11246 (balance on 1/1/90) | 668 |
| Expenses paid by check | 24,966 |
| less: Expenses paid by cash | (10,268) |
| Cash on drug busts | 20,000 |
| | |
| Total expenditures | 72,661 |

Understatement of Income

| | |
|---|---:|
| Total expenditures | $72,661 |
| less: total funds available | -57,425 |
| Understatement of income | 15,236 |

[1]The record does not disclose why this account may have been omitted in the reconstruction of petitioners' income for 1989.

OPINION

Matters Related to the Burden of Proof

Income from an illegal activity

In general, the Commissioner's determinations are entitled to a presumption of correctness, and the taxpayer bears the burden of rebutting such presumption by a preponderance of the evidence. Rule 142(a); Welch v. Helvering, 290 U.S 111, 115 (1933). The presumption of correctness is procedural in that it transfers to the taxpayer the burden of going forward with the evidence to establish that the Commissioner's determinations are incorrect. Jackson v. Commissioner, 73 T.C. 394, 400 (1979).

Normally, the Court does not look behind a notice of deficiency to examine the evidence used by the Commissioner in making the deficiency determinations. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). However, whenever the notice of deficiency is found to be arbitrary, excessive, or without rational foundation, the burden of going forward with the evidence is borne by the Commissioner. Helvering v. Taylor, 293 U.S. 507 (1935). This exception to the general rule has been applied in cases involving unreported income from illegal activities. E.g., Dellacroce v. Commissioner, 83 T.C. 269, 287 (1984).

Petitioners seek to invoke the foregoing exception to the general rule by arguing that respondent's deficiency determination for 1990 "is not supported by the proper foundation of substantive evidence". Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979). However, for the following reasons, we do not think that such determination is "a 'naked' assessment without any foundation." See United States v. Janis, 428 U.S. 433, 441 (1976).

First, 2 days after his criminal trial began, petitioner pleaded guilty to the charge that from "in or about June 1990 to in or about September 1990, within the Northern District of Alabama, * * * [petitioner] did unlawfully, knowingly and intentionally possess with the intent to distribute and distributed marijuana, a Schedule I controlled substance, in

violation of Title 21, United States Code, Section 841(a)(1)." Petitioner's plea constitutes an admission of guilt.

Second, evidence gathered during the criminal investigation of Ronnie Chandler, petitioner, and the other individuals, as well as evidence adduced during the subsequent criminal prosecution, inculpates petitioner as involved in the drug business. Such evidence also undoubtedly influenced his decision to plead guilty to the tenth count of the indictment 2 days after the criminal trial began.

Third, at the trial herein a third party testified that petitioner had sold her marijuana and had admitted to her that he had "played" with marijuana for many years before 1990.

We think that the foregoing matters suffice to establish a rational basis upon which respondent could determine, as she did, that petitioner was involved in the drug business during 1990, and that he derived unreported income from such business during that year.

Use of an indirect method to reconstruct income

Petitioners also argue that respondent's deficiency determinations for 1989 and 1990 should not enjoy their usual presumption of correctness because respondent was not justified in reconstructing petitioners' income for those years using an indirect method. Again, we disagree.

When a taxpayer fails to maintain adequate books and records as required by section 6001, the Commissioner may reconstruct the

taxpayer's income in accordance with a method that clearly reflects income. Petzholdt v. Commissioner, 92 T.C. 661, 687 (1989). This possibility includes the use of indirect methods. Holland v. United States, 348 U.S. 121 (1954). Although the Commissioner's reconstruction need not be exact, it must be "reasonable in light of all surrounding facts and circumstances." Schroeder v. Commissioner, 40 T.C. 30, 33 (1963).

Here it should be recalled that respondent reconstructed petitioners' income for 1989 and 1990 using an indirect method, namely, the source and application of funds method. This method of reconstructing income has long been accepted by this Court. E.g., Vassallo v. Commissioner, 23 T.C. 656 (1955). It is not a system of accounting; rather, it is a technique that may be used to determine whether a taxpayer's books and records accurately reflect the taxpayer's true income. Id. at 661-662; Estate of Bartlett v. Commissioner, 22 T.C. 1228, 1230 (1954). Accordingly, the Commissioner need not prove the inadequacy of a taxpayer's books and records before using an indirect method of reconstructing the taxpayer's income.[3] Id. Any other rule would

---

[3] We should not be understood to imply that we think that petitioners' books and records were adequate. Indeed, the evidence in this case suggests the contrary. For example, Mrs. Chandler did not retain petitioners' bank statements and the carbon copies of their checks but rather discarded them after the checks had cleared their accounts. In addition, petitioner conducted much of his business in cash. Moreover, it would appear that no records were maintained regarding sales of marijuana.

unjustly reward the taxpayer who cleverly conceals income in the guise of a "perfect" set of books and records.

In view of the foregoing, we hold that petitioners bear the burden of going forward with the evidence, as well as the ultimate burden of persuasion, with respect to respondent's deficiency determinations for the years in issue.

Understatement of Income for 1989 and 1990

As noted above, respondent reconstructed petitioners' income for 1989 and 1990 using the source and application of funds method.  This method of reconstructing income is based on the assumption that the amount by which a taxpayer's application of funds during a taxable year exceeds the taxpayer's known sources of funds for such year represents taxable income.  A taxpayer has the right, of course, to identify particular areas or specific instances where the Commissioner's analysis fails to reflect the taxpayer's actual income.  E.g., Meneguzzo v. Commissioner, 43 T.C. 824 (1965).  Thus, for example, the Commissioner's analysis should be adjusted whenever the taxpayer demonstrates: (1) The analysis does not reflect, as a nontaxable source of income, funds accumulated at the beginning of a year and expended during the year, or (2) the analysis includes, as an application of funds, amounts that do not reflect expenditures made by the taxpayer during the year.

Petitioners do not dispute the mechanics of respondent's source and application of funds analysis other than in three

respects. First, they contend that respondent's analysis failed to credit them with cash on hand at the beginning of 1989. Second, they contend that respondent's analysis overstated their expenditures for 1989 and 1990. Third, they contend that respondent's analysis erroneously charged them with $20,000 derived from drug trafficking in 1990. As discussed below, we reject petitioners' first and third contentions; however, we agree in part with their second contention.

Based principally on the testimony of petitioner at trial, petitioners contend that they had cash on hand at the beginning of 1989 in the approximate amount of $2,000 to $4,000. However, we are unable to accept uncritically petitioner's testimony to this effect. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (the Court is not required to accept a taxpayer's self-serving testimony as gospel). Apart from our evaluation of the witness, we note that petitioner's testimony stated no more than that he maintained cash on hand "on a pretty consistent basis". Thus, there was no testimony that cash on hand held at the beginning of 1989 was actually expended during either 1989 or 1990.

We also reject petitioner's testimony that he was never involved in either the production, distribution, or sale of marijuana, and that he never possessed marijuana or even saw a marijuana plant. See Tokarski v. Commissioner, supra. We do not think that petitioner would have pleaded guilty to a drug-related felony charge if the foregoing statements were true. We also

reiterate the matters set forth above in our discussion regarding the burden of proof.

However, we do partially accept petitioners' contention that respondent overstated their expenditures for 1989 and 1990. Based principally on the testimony of Mrs. Chandler, who impressed us as a credible witness, we have found as a fact that expenses paid by petitioners by cash and check during 1989 and 1990 did not exceed $37,215 and $19,416, respectively.[4] See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

Addition to Tax Under Section 6651(a)(1)

We turn now to the addition to tax for failure to timely file.

In the case of a failure to file an income tax return within the time prescribed by law, section 6651(a)(1) provides for an addition to tax in the amount of 5 percent of the tax required to be shown on the return for each month (or part thereof) during which such failure continues, but not to exceed 25 percent in the aggregate. See sec. 301.6651-1(a)(1), Proced & Admin. Regs. The taxpayer is not liable for the addition to tax if the failure to timely file is due to reasonable cause and not due to willful

---

[4] Respondent determined that expenses paid by petitioners by cash and check during 1989 and 1990 amounted to $43,215 and $28,416, respectively. Consequently, as a result of our finding, the understatement of petitioners' income for 1989 will be reduced from $11,149 to $5,149, and the understatement in petitioners' income for 1990 will be reduced from $15,236 to $6,236.

neglect. The taxpayer bears the burden of showing that the Commissioner's determination is erroneous and that the failure to timely file is due to reasonable cause and not due to willful neglect. Rule 142(a); <u>Abramo v. Commissioner</u>, 78 T.C. 154, 163 (1982).

There is no question that petitioners failed to file their 1990 income tax return within the period prescribed by law. Their return for that year was due on or before April 15, 1991.[5] Sec. 6072(a). However, they failed to file a return until June 10, 1991. Accordingly, petitioners are liable for the addition to tax under section 6651(a)(1) unless they can show that their failure to timely file was due to reasonable cause and not due to willful neglect. <u>Estate of DiRezza v. Commissioner</u>, 78 T.C. 19, 32-33 (1982).

A failure to file is due to "reasonable cause" if the taxpayer exercised ordinary business care and prudence but, nevertheless, failed to file the return within the period prescribed by law. <u>Estate of Paxton v. Commissioner</u>, 86 T.C. 785, 819 (1986); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The term "willful neglect" contemplates a conscious, intentional failure to file or a reckless indifference to the obligation to file. <u>United States v. Boyle</u>, 469 U.S. 241 (1985). Whether

---

[5] Petitioners do not contend that they requested an extension of time to file their 1990 income tax return, and there is no evidence in the record suggesting that they did do so. See sec. 6081(a); sec. 1.6081-1, Income Tax Regs.

reasonable cause exists and whether willful neglect is absent are questions of fact to be decided based on all of the facts and circumstances in a particular case. <u>Estate of DiRezza v. Commissioner</u>, <u>supra</u> at 33.

Petitioners contend that they are not liable for the addition to tax because petitioner's attorney in the drug prosecution advised petitioner not to file his 1990 income tax return until the criminal case was concluded. However, apart from the fact that this contention would not shield Mrs. Chandler from liability for the addition to tax because she was neither a defendant nor otherwise implicated in the drug prosecution,[6] we are not persuaded, for the following reasons, that the defense of reliance on professional advice is available to petitioners under the particular facts of the present case. See <u>United States v. Boyle</u>, <u>supra</u>.

First, we are again reminded of the familiar principle that the Court is not required to accept uncritically a taxpayer's self-serving testimony as gospel. <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986). The application of this principle in the present case is especially significant because we cannot imagine

---

[6] We note that Mrs. Chandler is a college graduate and a registered nurse by profession. In 1989 and for part of 1990, she worked part-time as a bookkeeper. She impressed us as an intelligent woman. Given her relatively straightforward tax situation, we can see no compelling reason why she could not have prepared her own return or at least sought competent assistance if petitioner had been unwilling to timely file a joint return. See sec. 6013(b)(1).

that an attorney would advise his or her client not to file a return that is legally required to be filed <u>and</u> not to request an automatic extension of time to file. See secs. 6012(a)(1) and 6081(a); sec. 1.6081-1, Income Tax Regs.

Second, we note that petitioners failed to call as a witness the attorney who allegedly gave petitioner the advice not to file his return until the criminal case was concluded. Thus, we are reminded of another familiar principle, namely, that a party's failure to call a critical witness may give rise to a presumption that, if called, the witness' testimony would not have been favorable to the party. <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Third, petitioner's criminal case was essentially concluded on February 14, 1991, 2 days after his jury trial began, when petitioner pleaded guilty to the tenth count of the indictment pursuant to an agreement reached with the U.S. Attorney. We fail to appreciate why the 1990 return could not have been prepared and filed within the next 2 months.

Fourth, petitioner failed to prove that the attorney on whom he allegedly relied was competent to give tax advice and that petitioner's alleged reliance thereon was therefore reasonable. In our view, advice not to file a return that is legally required to be filed <u>and</u> not to request an automatic extension of time to file is suspect, particularly when, as noted above, petitioner

had already plea bargained and was merely awaiting the imposition of his sentence by the District Court.

Finally, we note that the return for 1990 filed by petitioners in June 1991 was in no way incriminatory of petitioner regarding the sale of marijuana. Indeed, petitioners did not report any income from the sale of marijuana on that return. We therefore fail to appreciate why there was any need to delay filing the 1990 return and, a fortiori, why an automatic extension of time to file could not have been filed. In our view, petitioners' return for 1990 makes petitioner's contention all the more suspect.

In view of the foregoing, we conclude that petitioners have failed to carry their burden of proof on this issue. We hold, therefore, that they are liable for the addition to tax under section 6651(a)(1).

## Accuracy-related Penalty Under Section 6662(a)

Finally, we turn now to the accuracy-related penalty for negligence or intentional disregard of rules or regulations.

Section 6662(a) imposes a penalty on the underpayment of tax in an amount equal to 20 percent of the portion of underpayment due to negligence or intentional disregard of rules or regulations. Sec. 6662(b)(1). "Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, specifically including the failure to maintain adequate books and records. Sec. 6662(c); sec. 1.6662-

3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless or intentional disregard of the rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances of a particular case. Sec. 1.6664-4(b)(1), Income Tax Regs.

The taxpayer bears the burden of showing that the Commissioner's determination of negligence or disregard of rules or regulations is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Petitioners do not specifically contend that they are not liable for the accuracy-related penalty apart from their contention that there is no underpayment of tax for either 1989 or 1990. However, we have already held to the contrary. Therefore, they have failed to carry their burden of proof on this issue. In addition, we think that petitioners' failure to maintain adequate books and records reflecting their true income indicates an intentional disregard for the rules or regulations. Moreover, the record does not reveal any reasonable cause for such disregard.

In view of the foregoing, we hold that petitioners are liable for the accuracy-related penalty under section 6662(a).

<u>Conclusion</u>

In order to reflect our disposition of the disputed issues, as well as petitioners' concession,

<u>Decision will be entered</u>

<u>under Rule 155.</u>